INTERNATIONAL INSURANCE COMPANY, Plaintiff-Appellee, v. ALLIED VAN LINES, INC., Defendant-Appellant.

First District (1st Division)   No. 1—96—0875

Opinion filed November 17, 1997.

Bates, Meckler, Bulger & Tilson, of Chicago (Bruce R. Meckler, Steven D. Pearson, and Mark G. Sheridan, of counsel), for appellant.

Kralovec & Marquard, Chartered, of Chicago (Nancy J. Arnold and William E. Spizzirri, of counsel), for appellee.

JUSTICE O'BRIEN delivered the opinion of the court:

Former employees Gerald Oberg, Nicholas Tautz, and Steven Adams filed a class action complaint against Allied Van Lines, Inc. (Allied), alleging Allied terminated their employment in violation of the Age Discrimination in Employment Act of 1967 (ADEA) (29 U.S.C. § 626 (1994)). Allied tendered the matter to its insurer, International Insurance Company (International), for defense pursuant to its comprehensive general liability policy (CGL policy). International denied coverage and filed the instant action seeking a declaration of the parties' rights and liabilities under the CGL policy. Following a hearing on cross-motions for summary judgment, the trial court entered summary judgment in favor of International and against Allied. Allied appeals. We affirm.

■ Summary judgment is proper only where there are no issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1996). We review the matter *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).

■ As a general rule, International has a duty to defend Allied "unless it is clear *from the face of the underlying complaint* that the allegations fail to state facts that bring the case within, or potentially within, the policy's coverage." (Emphasis added.) *Dixon Distributing Co. v. Hanover Insurance Co.*, 161 Ill. 2d 433, 439, 641 N.E.2d 395 (1994); *Thornton v. Paul*, 74 Ill. 2d 132, 384 N.E.2d 335 (1978) (reaffirming Illinois' adherence to the general rule). Here, however, the procedural posture of the case—an appeal from a grant of summary judgment—permits this court to look beyond the face of the complaint and take into consideration the affidavits, depositions, admissions, exhibits, and pleadings on file. See 735 ILCS 5/2—1005(c) (West 1996) (in rendering summary judgment, court should take into consideration affidavits, depositions, admissions, exhibits, and pleadings on file and construe them against the movant); *Associated Indemnity Co. v. Insurance Co. of North America*, 68 Ill. App. 3d 807, 386 N.E.2d 529 (1979) (in appeal from grant of summary judgment in favor of insurer, court considered "true but unpleaded facts" indicating the underlying claim was at least potentially within the policy's coverage); *Kufalk v. Hart*, 636 F. Supp. 309 (N.D. Ill. 1986) (in appeal from grant of summary judgment in favor of insurer, court considered allegations in discovery deposition taken in the underlying action indicating the underlying claim was at least potentially within the policy's coverage).

International's CGL policy provided the following relevant coverage:

"Coverage A. Bodily Injury and Property Damage Liability
  1. Insuring Agreement.
    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damages' to which this insurance applies. *** This insurance applies only to 'bodily injury' *** caused by an 'occurrence.' "

The policy defined "bodily injury" as "bodily injury, sickness or disease sustained by a person" (hereinafter bodily injury coverage).

The CGL policy also included an endorsement that enhanced the policy's liability coverage. It added the following:

"A. Employee Benefits Liability Coverage
  1. Insuring Agreement.

We will pay those sums that the insured becomes legally obligated to pay as damages sustained by [a] *** former employee *** of the insured *** and caused by any *negligent* act, error, or omission of the insured *** in the 'administration' of your 'Employee Benefit Program.'

2. Exclusions

This Coverage does not apply to:

a. any *** criminal *** act, *** or humiliation

b. 'Bodily injury' ***

***

d. Your failure to comply with any state or federal law, regulation or order ***." (Emphasis added.)

(Hereinafter employee benefits coverage.)

■ The underlying age discrimination complaint against Allied alleged that "[a]s a result of defendants' conduct, plaintiffs and members of the class have suffered and will suffer the loss of salary, loss or reduction of other job-related benefits, and other damages and expense." The complainants sought reinstatement with seniority rights and benefits, back pay and other pecuniary losses plus interest thereon. Because the complaint alleges monetary loss rather than bodily injury (bodily injury coverage), and because it alleges those losses arise out of Allied's intentional termination of plaintiffs' employment rather than a negligent act (employee benefits coverage), it is clear *from the face of the complaint* that the allegations fail to state facts that bring the case within, or potentially within, the policy's coverage. Accordingly, if a duty to defend exists, it arises from matters outside the four corners of the complaint.

Allied points to two documents contained in the record on appeal to support its claim that International had a duty to defend: Nicholas Tautz's response to Allied's interrogatory No. 7 and the transcript of his deposition. Allied's interrogatory No. 7 asked Tautz to "[s]tate the amount of back pay, front pay or other damages which you claim you are entitled to in this matter, and, with respect to that amount, state in detail the basis for that calculation." Tautz responded that, in addition to lost wages, legal fees, and the difference between reduced and full pension, he sought "reimbursement for humiliation." The transcript of Tautz's deposition recounts the following relevant exchanges:

"COUNSEL FOR ALLIED: When you found out that your position at Allied had been terminated, what efforts did you make to find alternative employment?

A. First of all, I had a shock, and it took me about a week to recover. ***

* * *

COUNSEL FOR ALLIED: You said that after you found out that your position had been terminated, you were in shock and it took you a week to recover. Were you ill?

A. No. Just emotionally going through the trauma of losing a position. ***

* * *

COUNSEL FOR ALLIED: Did you become physically sick?

A. Just emotionally.

COUNSEL FOR ALLIED: Did you lose any sleep?

A. Yes, and I'm still losing sleep.

* * *

COUNSEL FOR ALLIED: Do you have any nervousness?

A. It still bothers me.

COUNSEL FOR ALLIED: Did you become depressed?

A. And I'm still depressed.

COUNSEL FOR ALLIED: Have you sought any medical assistance for this depression?

A. No.

COUNSEL FOR ALLIED: Have you spoken to any psychiatrists or psychologists about the depression?

COUNSEL FOR TAUTZ: I think we ought to take a break. Also, I don't understand what the line of questioning is here. I don't think we can put any evidence like that in.

COUNSEL FOR ALLIED: Well, you had some very vague assertions concerning your damages.

COUNSEL FOR TAUTZ: Well, you can't get damages like that under the Age Discrimination Act. I think we're sort of wasting time."

Based upon the foregoing, Allied contends International has a duty to defend the suit under one or both of the CGL policy's insuring agreements outlined above. Initially, Allied contends International has a duty to defend the suit under the policy's bodily injury coverage because Tautz's humiliation, shame, shock and depression are injuries or illnesses within the meaning of the policy definition of "bodily injury." Allied's analysis is misplaced.

As previously noted, the insuring agreement for bodily injury coverage provides, "[Insurer] will pay those sums that the insured becomes legally obligated to pay as damages *because of* 'bodily injury' *** to which this insurance applies." (Emphasis added.) Here, Allied's claim ignores the nature of the underlying complaint. As counsel for Tautz pointed out during Tautz's deposition, one cannot recover damages for emotional distress under the ADEA. See 29 U.S.C.S. § 626(b) & n.122 (Law Co-op. 1990) (collecting cases, including *Pfeiffer v. Essex Wire Corp.*, 682 F.2d 684 (7th Cir. 1982), *cert.*

*denied*, 459 U.S. 1039, 74 L. Ed. 2d 606, 103 S. Ct. 453 (1982); *Stevenson v. J.C. Penney Co.*, 464 F. Supp. 945 (N.D. Ill. 1979) (damages for mental suffering not available under ADEA)). Thus, even assuming without deciding that humiliation, shame, shock and depression are injuries or illnesses within the meaning of the policy definition of "bodily injury," the nature of the complaint precludes the possibility that Allied could become legally obligated to pay damages "because of" such injuries. The fact that claimants' emotional suffering may have been occasioned by their economic loss does not transmute an economic claim under the ADEA into one seeking recovery from Allied for "bodily injury." Accordingly, the CGL policy's bodily injury coverage does not apply.

Allied's reliance on *Kufalk v. Hart*, 636 F. Supp. 309 (N.D. Ill. 1986), is misplaced. In *Kufalk*, a school director sought to hold the school board and certain individuals liable for injuries he suffered as a result of his allegedly wrongful termination. The defendants filed a third-party complaint against their insurer seeking a declaration of the insurer's duty to defend the action under the "bodily injury" provision of a CGL policy. During the pendency of the third-party action, the school director was deposed. During his deposition, the school director claimed that since his discharge he had suffered "bouts of depression resulting in general lethargy, headaches, stomach pains and diarrhea." 636 F. Supp. at 311. Because the court could not say that the school director's deposition allegations clearly fell outside the CGL policy's definition of "bodily injury," it concluded the insurer had a duty to defend. 636 F. Supp. at 312.

The striking factual similarities notwithstanding, *Kufalk* is distinguishable from the case *sub judice*. In *Kufalk*, the underlying claimant brought his suit under 42 U.S.C. § 1983. A section 1983 action, unlike an action brought under the ADEA, permits recovery of compensatory damages for emotional distress, humiliation and the like. See 42 U.S.C.S. § 1983 n.1624 (Law Co-op. 1994) (collecting cases). Thus, in *Kufalk*, unlike here, the nature of the complaint did not preclude the possibility that Allied could become legally obligated to pay damages "because of" such injuries. Accordingly, *Kufalk* is not persuasive authority in the instant case and we express no opinion as to the accuracy of the district court's interpretation of Illinois law on the issue of whether emotional distress that is manifested by physical symptoms falls within the CGL policy's definition of "bodily injury."

Alternatively, Allied contends that International has a duty to defend the suit under the policy's employee benefits coverage because it alleges loss of "job-related benefits" all of which are covered under the insuring agreement. We disagree.

Again, as previously noted, the CGL policy's employee benefits coverage provides that International will pay for damages "caused by any negligent act, error, or omission" of Allied in the administration of its benefits program. The policy excludes from coverage damages caused by any "criminal" act, "humiliation," "bodily injury," or Allied's "failure to comply with any state or federal law." Because Allied purposefully rather than negligently or erroneously terminated the underlying complainants' employee benefits, there is no coverage under the endorsement. Moreover, if we assume, as Allied would have us do, that at least the underlying complainants sought damages for their humiliation or other emotional distress amounting to "bodily injury," then the policy specifically excludes coverage. Finally, Allied's alleged failure to comply with the ADEA precludes employee benefits coverage.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

BUCKLEY and GALLAGHER, JJ., concur.