NEW HAMPSHIRE INSURANCE COMPANY, Plaintiff,

v.

WESTLAKE HARDWARE, INC., Defendant.

WESTLAKE HARDWARE, INC., Plaintiff,

v.

NEW HAMPSHIRE INSURANCE COMPANY, Defendant.

Nos. Civ.A. 97–2573–KHV, Civ.A. 97–2580–KHV.

United States District Court, D. Kansas.

June 16, 1998.

Douglas R. Richmond, David R. Barnard, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, for New Hampshire Insurance Company, plaintiff.

Charles W. German, Marcus N. Bozeman, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Westlake Hardware, Inc., defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on cross-motions for summary judgment: *New Hampshire Insurance Company's Motion For Summary Judgment* (Doc. # 15) filed January 26, 1998, and *Westlake Hardware, Inc.'s Motion For Summary Judgment* (Doc. # 47) filed March 31, 1998. New Hampshire Insurance Company [New Hampshire] seeks a declaratory judgment that Westlake Hardware, Inc. has no coverage under the employee benefits liability endorsement of a comprehensive general liability insurance policy which it issued effective August 1, 1996. Through its cross-motion, Westlake seeks to recover the cost of defending and settling a lawsuit initiated by Richard Masinton, its former chief financial officer. *See Masinton v. Westlake Hardware Inc., Trustee,* Case No. 97–2306–GTV. For the following reasons, the Court finds that Westlake has no coverage under the employee benefits liability [EBL] endorsement and that New Hampshire's motion for summary judgment should be sustained.

### Summary Judgment Standards

The standards and procedures for summary judgment are well established and will not be fully repeated here. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In essence, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

### Factual Background

In its policy, New Hampshire agreed to indemnify Westlake for "all sums which [it] shall become legally obligated to pay as damages on account of any claim made against [it] by any employee, former employee or the beneficiaries or legal representatives thereof for injury caused by any negligent act, error or omission of the Insured' in the administration of the Named Insured's Employee Benefits as defined herein." The plan defines "administration" as follows:

(a) Giving counsel to employees including their dependents and beneficiaries, with respect to the Employee Benefits;

(b) Interpreting Employee Benefits;

(c) Handling records in connection with Employee Benefits;

(d) Effecting enrollment, termination or cancellation of employees under Employee Benefits Programs.

On December 16, 1996, Masinton notified Westlake that he was resigning his position as chief financial officer. Before that time, Masinton had participated in an unfunded employee benefit plan, referred to as the "Stock Plan," through which he had purchased 20,329 shares of common stock in Westlake at $1.00 per share. Under the Stock Plan, if an employee voluntarily terminated his employment, Westlake was obligated to repurchase that stock at a price equal to the lower of book value or appraisal value at the end of the previous month. If the termination occurred by reason of normal retirement, death or disability, or at the company's election, Westlake was required to

repurchase the shares at the *greater* of book value or appraisal value.

Masinton demanded that Westlake purchase his shares at the 1996 year-end appraisal rate of $25.85 per share, which was greater than book value. Masinton claimed that he was entitled to the higher amount because his resignation was involuntary, in that he had been "prevented from performing [his] duties and responsibilities and asked to do things that [he] should not do," and he therefore had to resign. *See* Exhibit B(2), letter of January 3, 1997, from Masinton to Howard Elsberry, President/CEO of Westlake Hardware, *Memorandum In Opposition To Plaintiff's Motion For Summary Judgment* (Doc. # 24) filed February 17, 1998. In response, Westlake looked to the Stock Plan to determine (1) whether Masinton had been involuntarily terminated and was therefore entitled to the higher valuation; (2) the effective date of Masinton's departure for purposes of stock redemption and entitlement to continued dividends; and (3) how to effectively terminate Masinton's shareholder status. Westlake ultimately determined that Masinton had voluntarily resigned and that he was entitled to only the book value of his shares. On December 16, 1994, it transferred $450,000 to an irrevocable trust to cover the approximate value of his stock.

After Masinton left, Westlake investigated his performance as CFO. It concluded that because the Stock Plan was an employee benefit plan under ERISA, amounts otherwise due under the plan were subject to forfeiture for malfeasance, breach of fiduciary duty, and negligence by Masinton. It also determined that circumstances warranted a forfeiture of benefits in his case. Accordingly, after Masinton tendered his shares on April 29, 1997, Westlake did not pay him or distribute any trust funds.

Masinton sued Westlake on May 20, 1997, alleging that it had breached its fiduciary duties as trustee of the irrevocable trust established for his benefit. More specifically, he alleged that Westlake had actively concealed the existence of the trust, threatened to sue him for exercising his rights under the Stock Plan, concealed an independent accounting report which determined the value of his stock, and refused to pay him for his shares in accordance with the trust. Masinton also alleged that Westlake acted for its own benefit (rather than for his benefit as beneficiary) and that its actions were fraudulent, intentional, and so forth.

On August 29, 1997, Masinton and Westlake settled their dispute, along with any and all other claims arising from his employment, for $423,574.

### Analysis

 Westlake claims that New Hampshire had a duty to defend and indemnify it under the EBL endorsement. Under Kansas law, an insurer's duty to defend arises whenever there is a potential of liability under the policy. *See Bankwest v. Fidelity & Deposit Co.*, 63 F.3d 974, 978 (10th Cir.1995) (citing *State Farm Fire & Casualty Co. v. Finney*, 244 Kan. 545, 553, 770 P.2d 460, 466 (1989). The insurer must determine the potential for liability by examining the allegations of the complaint, as well as any additional facts that have been brought to its attention or that it could reasonably discover at the time it received notice of the claim. *See American Motorists Ins. Co. v. General Host Corp.*, 946 F.2d 1489, 1491 (10th Cir. 1991); *City of Salina v. Maryland Casualty Co.*, 856 F.Supp. 1467, 1480 (D.Kan.1994). The relevant determination is whether there is "a possibility that under the facts of the case the insured may be found legally obligated to pay damages because of an occurrence that was an insured risk; that is, a possibility that there may be a duty to indemnify arising out of the facts of the case." *Bankwest*, 63 F.3d at 978 (citing *American Fidelity Ins. Co. v. Employers Mut. Casualty Co.*, 3 Kan.App.2d 245, 250, 593 P.2d 14, 19–20 (1979). An insurer is not required to defend, however, if the action is brought "wholly outside any coverage obligations assumed in the policy or when the insurer would have no liability if plaintiff secured a judgment against the insured." *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 684, 512 P.2d 403, 406 (1973).

 The duty to indemnify is narrower than the duty to defend. *Bankwest*, 63 F.3d at 978. Although the duty to defend is determined by the allegations of the underlying complaint and by facts discoverable by the insurer, the duty to indemnify is determined

by the facts as they are established at trial or as they are finally determined by some other means (e.g., summary judgment or settlement). *Id.* As the insured, Westlake has the burden to prove that its loss falls within the EBL endorsement. *See City of Salina,* 856 F.Supp. at 1474 (and cases cited therein).

This case presents the issue whether Westlake's interpretation of its Stock Plan was a "negligent act, error or omission" in the administration of the plan. Construction of an insurance contract is a question of law. *Id.* Where an insurance contract is unambiguous, the Court must enforce the contract as made and not make another contract for the parties. *Id.*

■ The EBL endorsement in this case does not specifically define "negligent act, error or omission." [1] Westlake argues that the word "negligent" modifies only the word "act," so that coverage extends to negligent acts and to all errors and omissions whether negligent or not. New Hampshire insists that the word "negligent" modifies the entire phrase, and that the policy affords coverage for negligent acts, negligent errors and negligent omissions. Westlake's argument has been specifically rejected in the District of Kansas. In *Golf Course Superintendents Ass'n v. Underwriters at Lloyd's, London,* 761 F.Supp. 1485 (D.Kan.1991), Judge Crow examined a directors and officers liability policy and concluded that coverage for any "negligent act, error, omission, misstatement or misleading statement" does not include intentional acts. *Id.* at 1489–90. The court reasoned that the term "negligent" must modify the words "act," "error," and "omission" because "[i]t would be self-defeating to limit the definition of [the phrase] to negligent acts, but at the same time cover intentional errors or omissions." *Id.* at 1490. This Court agrees. To do otherwise would render the word "negligent" meaningless.

■ Westlake also argues that because the EBL endorsement defines "administration" to include "interpreting employee bene-

fits," and because benefit interpretation is necessarily an intentional act, the policy must cover intentional acts. This argument is foreclosed, however, by the Court's prior holding in *Bendis v. Hartford Accident & Indem., Co.,* 1993 WL 463617 (D.Kan. Sept.16 1993). In *Bendis,* an employee claimed that his employer had conspired to defraud him of bonus and stock option rights, breached a stock option contract, and made misrepresentations regarding that contract. *See id.* at *1. An EBL endorsement insured the employer against claims arising out of "any negligent act or omission ... in the administration of the named insured's Employee Benefits Program." The policy defined administration as follows:

(1) giving counsel to employees ... with respect to eligibility in or scope of Employee Benefit Programs available to such employee by virtue of his employment by the named insured;

(2) handling of records in connection with Employee Benefits Programs;

(3) effecting or terminating enrollment of any employee of the named insured under Employee Benefits Program.

*Id.* Under this definition, we held that the employee's claims did not arise out of negligent policy administration and were thus not covered by the policy. *Id.*

Westlake attempts to distinguish *Bendis,* arguing that the definition of "administration" in this case is materially different and is intended to cover intentional non-negligent acts. The Court, however, does not agree. The only difference between the policy definition in *Bendis* and the policy in this case is that the latter affords coverage for negligent acts, errors or omission in "interpreting employee benefits." The extended definition in this case makes explicit that which was only implicit in *Bendis,* because interpreting employee benefits is necessarily covered by the first and third definitions in *Bendis, i.e.* giving counsel to employees regarding available

---

1. In its *Memorandum In Support Of Its Motion For Summary Judgment,* Westlake argues that the use of the word "negligent" in this context is "at the very least ambiguous." *See* (Doc. # 48) filed March 31, 1998 at n. 8. Westlake made no such claim in its complaint, nor did it preserve this argument in the *Pretrial Order* (Doc. # 46) en-

tered March 31, 1998, and the Court will not consider it here. *See* Fed.R.Civ.P. 16(e); *Baty v. Willamette Indus., Inc.,* 1997 WL 292123 at *9 n. 12 (D.Kan. May 1, 1997). On the merits, however, the Court cannot agree that the phrase "negligent act, error or omission" is ambiguous.

benefits and effecting or terminating an employee's enrollment for benefits. The fact that New Hampshire's policy affords coverage for negligent acts, errors and omissions in the interpretation of contract benefits does not evidence an intent to extend coverage to intentional acts.[2] *Accord Baylor Heating & Air Conditioning, Inc. v. Federated Mut. Ins. Co.,* 987 F.2d 415, 419–420 (7th Cir.1993) (judgment awarding pension fund amounts pursuant to collective bargaining agreement was not injury arising from "negligent act, error, or omission" within policy coverage, regardless of insured's mistaken assumption regarding its contractual liability); *First Southern Ins. Co. v. Jim Lynch Enterprises, Inc.,* 932 F.2d 717, 719–720 (8th Cir.1991) (employee's claim under Stock Purchase Agreement not covered by EBL policy insuring against negligent acts, errors or omissions in administration of employee benefit program); *see also Cincinnati Ins. Co. v. Metropolitan Properties, Inc.,* 806 F.2d 1541 (11th Cir.1986); *International Ins. Co. v. Allied Van Lines, Inc.,* 293 Ill.App.3d 513, 227 Ill.Dec. 987, 688 N.E.2d 680 (1997).

Westlake does not claim that it was negligent in administering Masinton's stock plan. Rather, it argues that it was interpreting Masinton's benefits under the Stock Plan, and that it thereby performed an intentional act which is covered by the EBL endorsement. The EBL endorsement does not provide coverage, however, for intentional acts. Accordingly, New Hampshire has no duty to indemnify.

Moreover, the Court finds that New Hampshire had no duty to defend. As previously stated, an insurer is not required to defend an action which is "wholly outside any coverage obligations assumed in the policy or when the insurer would have no liability if plaintiff secured a judgment against the insured." *Spruill Motors, Inc.,* 212 Kan. at 684, 512 P.2d at 406. Westlake argues that the Court should deny summary judgment to New Hampshire because it ignored facts which were reasonably ascertainable in making its coverage determination. Westlake cites no particular facts, however, except the fact that in the course of Masinton's lawsuit he asserted that "additional employment practices and employee benefits claims for damages would be filed in an amended or subsequent pleading." *See* Exhibit D, Settlement Agreement, *Memorandum In Opposition To Plaintiff's Motion For Summary Judgment* (Doc. # 24) filed February 17, 1998. Westlake has not demonstrated how this single fact (or any additional unspecified fact) created a realistic possibility that under the facts of the case Westlake might be found legally obligated to pay damages because of an occurrence that was an insured risk.[3]

**IT IS THEREFORE ORDERED** that *New Hampshire Insurance Company's Motion For Summary Judgment* (Doc. # 15) filed January 26, 1998, should be and hereby is sustained.

**IT IS FURTHER ORDERED** that *Westlake Hardware, Inc.'s Motion For Summary Judgment* (Doc. # 47) filed March 31, 1998, should be and hereby is overruled.

---

2. In so holding, the Court recognizes that contract interpretation is a task that can be performed in a negligent manner. *See e.g., Baylor,* 987 F.2d at 420 n. 8. In this case, however, Westlake argues only that the policy covers intentional interpretation and not that its interpretation was negligent.

3. Because the Court finds that New Hampshire did not have either a duty to defend or indemnify Westlake for Masinton's claim, the Court need not address New Hampshire's exclusion defense.