# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Illinois State Bar Ass'n Mutual Insurance Co. v. Cavenagh*, 2012 IL App (1st) 111810

| | |
|---|---|
| Appellate Court Caption | ILLINOIS STATE BAR ASSOCIATION MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. TIMOTHY J. CAVENAGH, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-11-1810 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | November 1, 2012<br><br>December 13, 2012<br>December 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for plaintiff legal malpractice insurer in an action seeking a declaration that plaintiff did not have to provide a defense for a third-party complaint against plaintiff's insured arising from an underlying personal injury action brought by the insured, since the allegations in the third-party complaint were not within or potentially within the coverage of the malpractice policy, the insured's counterclaim under section 155 of the Insurance Code was properly denied, and an order barring the insured from further discovery was upheld. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CH-44982; the Hon. William O. Maki and the Hon. Sebastian T. Patti, Judges, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Peter V. Bustamante, of Chicago, for appellant.

Robert Marc Chemers and Adrian T. Rohrer, both of Pretzel & Stouffer Chtrd., of Chicago, for appellee.

Panel

JUSTICE EPSTEIN delivered the judgment of the court, with opinion.

Justices Quinn and McBride concurred in the judgment and opinion.

## OPINION

¶ 1    Illinois State Bar Association Mutual Insurance Company brought an action for declaratory judgment against its insured, Timothy J. Cavenagh, seeking a declaration that Cavenagh's professional liability insurance policy did not require ISBA Mutual to defend Cavenagh against a claim brought by a fellow attorney, Richard Bogusz. In response, Cavenagh claimed that ISBA Mutual was required to defend Cavenagh against Bogusz's complaint, and in a four-count counterclaim, he alleged breach of contract and tort claims based on ISBA Mutual's refusal to defend. The circuit court dismissed the counterclaim and granted summary judgment in favor of ISBA Mutual, and Cavenagh now appeals. For the reasons that follow, we affirm.

¶ 2    This insurance coverage dispute began with a personal injury suit filed by Steven Spilotro against Ken Joniak and another defendant. Spilotro was represented by Timothy Cavenagh, and both defendants were represented by Richard Bogusz. That suit ended in a default judgment award of $900,000 against Joniak. The default judgment gave rise to a second suit: Joniak filed a malpractice claim against Bogusz, claiming that Bogusz failed to appear or adequately represent him. Bogusz asked his professional liability insurance carrier, ISBA Mutual, to defend against Joniak's claims. ISBA Mutual assigned the law firm of Konicek and Dillon to defend Bogusz.

¶ 3    Bogusz later filed a third-party complaint against Cavenagh and Spilotro for fraud and conspiracy to commit fraud, alleging that Cavenagh had advanced Spilotro's personal injury claim while misrepresenting the status of the suit to Bogusz to mislead him from taking further action to defend the case. Bogusz specifically alleged that Cavenagh, without revealing that a trial date had been set, told Bogusz that he did not plan to proceed with the case and that the case would settle for a small amount. Bogusz also alleged that Cavenagh and Spilotro misled the court to procure an inflated default judgment award. Bogusz further claimed that Cavenagh and Joniak agreed to file a malpractice suit so that Joniak could recover money to satisfy the judgment against him.

¶ 4    Cavenagh presented Bogusz's third-party complaint to his malpractice insurer, ISBA Mutual, and requested representation. Cavenagh's professional liability policy required ISBA Mutual to defend Cavenagh for any claim "aris[ing] out of a wrongful act." The policy defined the term "wrongful act":

-2-

"1. Any actual or alleged negligent act, error or omission in the rendering of or failure to render PROFESSIONAL SERVICES, including PERSONAL INJURY committed by the INSURED in the course of rendering PROFESSIONAL SERVICES; or

2. Any actual or alleged negligent act, error or omission in an INSURED'S capacity as a director or officer of any bar related professional legal association or the governing board thereof."

The policy also excluded from coverage any claim "arising out of any criminal, dishonest, fraudulent, or intentional act or omission committed by any of the INSURED." After Cavenagh tendered his defense, ISBA Mutual refused to defend Cavenagh because, in ISBA Mutual's view, the complaint did not allege a "wrongful act" as defined by the policy, and claims based on the insured's fraudulent or intentional acts were specifically excluded from coverage.

¶ 5    ISBA then sought a declaratory judgment that it did not owe any duty to defend Cavenagh against the third-party complaint. Cavenagh filed an answer, counterclaim, and affirmative defense. Cavenagh alleged that the lawyer ISBA assigned to defend Bogusz against Joniak's malpractice suit was "the agent of Bogusz and ISBA Mutual." Cavenagh further alleged that the third-party complaint against him was obviously frivolous, crafted by ISBA Mutual and Bogusz's lawyer, Konicek, so that it could justifiably deny coverage for Bogusz's suit. The counterclaim alleged that the purpose of the third-party complaint was to wrongfully exert pressure on Cavenagh and Spilotro to settle their claim against Joniak for less than the full value, which would limit ISBA Mutual's financial exposure in the malpractice case against Bogusz. Cavenagh raised four counts against ISBA Mutual in his counterclaim: breach of contract, breach of fiduciary duty, civil conspiracy, and vexatious and unreasonable conduct in violation of section 155 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/155 (West 2008)). As to the affirmative defense, Cavenagh alleged that ISBA Mutual should be "estopped" from raising any policy defenses against Cavenagh because ISBA had "agreed, consented to, and, ordered" the frivolous third-party complaint against Cavenagh.

¶ 6    The circuit court granted ISBA Mutual's motion to dismiss the counterclaim and strike the affirmative defense. The court dismissed the breach of fiduciary duty and conspiracy counts with prejudice, but dismissed the breach of contract and section 155 counts with leave to amend. Cavenagh filed an amended counterclaim, which the circuit court dismissed with prejudice.

¶ 7    Cavenagh then filed a motion for leave to file a second amended counterclaim, restating his breach of contract claim based on "new facts," specifically, that the circuit court hearing the malpractice case against Bogusz dismissed Bogusz's third-party complaint against Cavenagh. The court denied Cavenagh's motion for leave to file a second amended counterclaim. Cavenagh also served ISBA Mutual with a request to produce over 60 categories of documents and records, along with 23 interrogatories. ISBA Mutual moved for a protective order, arguing that the requested discovery was irrelevant to whether ISBA Mutual had a duty to defend Cavenagh. The circuit court granted the motion for protective order.

¶ 8          ISBA Mutual moved for summary judgment. Cavenagh then issued additional discovery, but the court again granted ISBA Mutual's motion for a protective order. Cavenagh then moved to reset the briefing schedule for the summary judgment motion; he attached an Illinois Supreme Court Rule 191(b) (eff. July 1, 2002) affidavit in support of his motion, averring that he could not respond until he was allowed to obtain additional discovery. The court denied Cavenagh's motion for discovery supported by the Rule 191(b) affidavit. Cavenagh then responded to ISBA Mutual's motion for summary judgment, attaching a Supreme Court Rule 191(a) affidavit in support. The circuit court struck Cavenagh's Rule 191(a) affidavit for failure to allege specific facts within Cavenagh's personal knowledge. The court granted ISBA Mutual's motion for summary judgment, finding that ISBA Mutual had no duty to defend Cavenagh. This appeal followed.

¶ 9                                    ANALYSIS
¶ 10        Cavenagh raises several issues on appeal, which can be grouped into three general categories: (1) the parties' claims as to ISBA Mutual's obligations under the policy; (2) Cavenagh's tort counterclaims; and (3) limitations on discovery prior to the summary judgment ruling in favor of ISBA Mutual.

¶ 11                          Claims Based on the Policy
¶ 12        The construction of an insurance policy raises a question of law, which we review *de novo*. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001). Because an insurance policy is a contract, the rules applicable to contract interpretation govern the interpretation of an insurance policy. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). The primary function of the court is to ascertain and enforce the intentions of the parties as expressed in the agreement. *Id.*

¶ 13        The court confronted the question of coverage under the policy in dismissing Cavenagh's breach of contract counterclaim under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2008)) and in granting summary judgment to ISBA Mutual on its declaratory judgment action. In reviewing a section 2-615 dismissal, we consider whether the allegations, construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 348 (2003). However, a plaintiff cannot rely simply on mere conclusions of law or fact unsupported by specific factual allegations. *Jackson v. South Holland Dodge, Inc.*, 197 Ill. 2d 39, 52 (2001). We review a section 2-615 dismissal *de novo*. *Id.* A motion for summary judgment is properly granted only when the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008). We review the court's summary judgment ruling *de novo*. *Travelers*, 197 Ill. 2d at 292.

¶ 14        To determine whether an insurer has a duty to defend the insured, the court must compare the allegations in the underlying complaint to the relevant provisions of the insurance policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125 (1992). "The

allegations in the underlying complaint must be liberally construed in favor of the insured." *Id.* "The insurer justifiably refuses to defend the insured if it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the cause within or potentially within coverage." *Certain Underwriters at Lloyd's, London v. Boeing Co.*, 385 Ill. App. 3d 23, 39 (2008) (citing *Dixon Distributing Co. v. Hanover Insurance Co.*, 161 Ill. 2d 433, 439 (1994)). "[L]ittle weight is given to the legal label that characterizes the allegations of the underlying complaint; rather, the determination focuses on whether the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy." *Illinois State Bar Ass'n Mutual Insurance Co. v. Mondo*, 392 Ill. App. 3d 1032, 1037 (2009); see also *International Insurance Co. v. Rollprint Packaging Products, Inc.*, 312 Ill. App. 3d 998, 1007 (2000) ("[T]he duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy.").

¶ 15    We begin with the policy language. The policy required ISBA Mutual to defend any claim that "arises out of a wrongful act." The policy defines "wrongful act" as "any actual or alleged negligent act, error or omission in the rendering of or failure to render PROFESSIONAL SERVICES, including PERSONAL INJURY committed by the INSURED in the course of rendering PROFESSIONAL SERVICES." The policy also excludes coverage for any claim "arising out of any criminal, dishonest, fraudulent, or intentional act or omission committed by any of the INSURED."

¶ 16    This court has addressed a nearly identical policy provision in *Illinois State Bar Ass'n Mutual Insurance Co. v. Mondo*, 392 Ill. App. 3d 1032 (2009). In that case, the policy covered claims arising out of a " 'wrongful act,' " which was defined to mean " 'any actual or alleged negligent act, error, or omission in the rendering or failure to render PROFESSIONAL SERVICES.' " *Mondo*, 392 Ill. App. 3d at 1038. The court determined that the insurer had no duty to defend where "the factual allegations in the *** underlying action [made] clear that [the insured's] failure to disclose information was allegedly part of his overall scheme to mislead and defraud the Insurance Trust and not based upon any negligent or potentially negligent conduct." *Id.* at 1039. The court also noted that even assuming the complaint could somehow be construed to allege negligent acts, the fraud count within the complaint would be excluded from coverage based on the policy's exclusion for any claims arising from "fraudulent" acts. *Id.* at 1039-40. *Mondo* is in line with a number of other decisions in Illinois interpreting similar policy language. See, *e.g.*, *United Fire & Casualty Co. v. Jim Maloof Realty, Inc.*, 105 Ill. App. 3d 1048, 1048-50 (1982) (denying coverage for intentional misrepresentation where policy covered "negligent act or omission" of the insured but did not apply to "dishonesty, intentional fraud, criminal or malicious act"); *International Insurance Co. v. Allied Van Lines, Inc.*, 293 Ill. App. 3d 513, 519 (1997) (denying coverage for intentional termination of employee benefits).

¶ 17    Without addressing any of these cases, Cavenagh argues that we should look to the dictionary definition of "wrongful act" to determine the meaning of the policy. He cites definitions that do not specifically mention "negligence," and then argues that "[i]f ISBA Mutual intended to limit coverage under the policy to only negligence, it could have easily done so." The problem with this argument is that ISBA *did* limit the policy to negligent acts, errors, and omissions by defining the term "wrongful act." Where the policy specifically

defines "wrongful act," we are not at liberty to search for other possible definitions in order to "create an ambiguity where none exists." *Dixon Distributing Co. v. Hanover Insurance Co.*, 161 Ill. 2d 433, 441 (1994). To do so would thwart the plain language of the policy and the intent of the parties.

¶ 18 Cavenagh next claims that the phrase "negligent act, error or omission" should be read so that the word "negligent" only modifies "act" and not "error" or "omission." In other words, Cavenagh argues that the policy covers negligent acts, intentional errors, and intentional omissions. We have little to add to the rejection of this same argument in *TIG Insurance Co. v. Joe Rizza Lincoln-Mercury, Inc.*, No. 00 C 5182, 2002 WL 406982 (N.D. Ill. Mar. 14, 2002). There, the court reasoned that "[i]t would be illogical for an endorsement to limit coverage to negligent acts, but to provide coverage for intentional omissions or errors." *Id.* at *9. The court also cited Illinois appellate court cases interpreting the "very common" phrase, noting that those courts "have assumed, without deciding, that 'negligent' modifies act, error, and omission and thus excluded coverage for intentional conduct." *Id.* (citing *United Fire*, 105 Ill. App. 3d at 1048, and *International Insurance*, 293 Ill. App. 3d at 519); see also *Mondo*, 392 Ill. App. 3d at 1038-39. If there were any doubt, the policy here specifically excludes coverage for "intentional acts." Indeed, adopting Cavenagh's interpretation of the phrase "negligent act, error or omission" would set two provisions of the policy in conflict. Reading the definition of "wrongful act" along with the exclusion for fraudulent and intentional acts, we conclude that ISBA Mutual's duty to defend is only triggered by allegations that the insured has committed an act of negligence, not an act classified as intentional.

¶ 19 We turn to the third-party complaint against Cavenagh and Spilotro. The complaint contains two counts: one for "fraud" and one for "conspiracy." In support of these claims, the complaint first alleges a series of intentional misrepresentations in a scheme to defraud Bogusz and the court in order to obtain a default judgment against Joniak: (1) Cavenagh made "intentional misrepresentation[s] of the status of the underlying lawsuit" to Bogusz "to mislead him from taking further action to defend the case"; (2) Cavenagh "knew that telling Bogusz that he did not plan to proceed with case when a trial date had been obtained by him when made and was made with the intent to mislead Bogusz"; and (3) Cavenagh "intentionally misrepresented to the Court at the [default judgment] prove-up hearing that Spilotro's injuries *** were much worse than [Spilotro's] medical records" demonstrated. The complaint alleges a second, related scheme, in which Cavenagh "recruited the aid" of Joniak and entered into an unwritten agreement with him (after the limitations period had run for challenging the default judgment) "to avoid a meritorious challenge by Joniak to the fraudulent *** underlying default judgment." Then, the complaint alleges that Joniak, still working in concert with Cavenagh, filed a malpractice suit so that Joniak could recover money to satisfy the default judgment. As ISBA Mutual points out, Cavenagh's actions are described as "intentional" six times, and the word "fraud" is also used at least six times to characterize Cavenagh's supposedly deliberate efforts. These allegations, when construed liberally in favor of Cavenagh, do not come close to alleging negligent acts. See, *e.g.*, *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 761 (2005) (finding that policy excluded coverage for intentional conduct and complaint alleged a "scheme to mislead

and defraud"); *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 563-64 (2000) (finding no coverage for complaint alleging conspiracy to "conceal" and "fail[ ] to disclose" where policy excluded coverage for intentional acts).

¶ 20    We note that the weakness of the coverage claim in this case stems from the theory that Cavenagh advanced in his counterclaim. The crux of Cavenagh's claim is not that ISBA was wrong to deny coverage because the underlying complaint alleged negligent acts covered by the policy. Instead, Cavenagh argues that the complaint against Cavenagh was "obviously false and frivolous" and the allegations within it were "woefully deficient to support a claim of fraud." The problem is that the false or frivolous nature of the third-party complaint does nothing to advance the duty-to-defend claim. As a general matter, when the underlying complaint alleges facts within or potentially within the policy's coverage, the insurer's duty to defend arises even if the allegations are groundless, false or fraudulent. *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 155 (2005). In this case, the policy imposes a duty to defend "even if any of the allegations of the suit *** are groundless, false or fraudulent." Cavenagh's argument implies that an insurer must defend a complaint's false or frivolous allegations, regardless of whether the allegations otherwise come with the policy's coverage. But "[t]he duty to defend does not depend on the probability of recovery." *Rollprint Packaging*, 312 Ill. App. 3d at 1007. It is the nature of the allegations in the underlying complaint that control, not their likelihood of success. Where the facts alleged, even if false or groundless, are not within or potentially within the policy's language, the insurer has no duty to defend.

¶ 21    On appeal, Cavenagh raises two additional arguments relevant to the breach of contract claim, both of which focus on the dismissal of Bogusz's third-party complaint against Cavenagh in the Joniak suit. The circuit court first dismissed Bogusz's complaint without prejudice under section 2-615 because the complaint "lack[ed] the requisite factual specificity necessary to allege all of the elements of fraud and conspiracy." The court then dismissed Bogusz's amended complaint against Cavenagh with prejudice under section 2-619, ruling that the action against Cavenagh was untimely.

¶ 22    Cavenagh first claims that the court in the Joniak case found that the "third-party complaint against Cavenagh did not allege fraud," and as a result ISBA Mutual is "precluded by *res judicata* from relying on the fraud exclusion in the policy." We disagree. The doctrine of *res judicata* will only bar a subsequent action between the same parties or their privies where "an identity of cause of action" exists between the two actions. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). There is simply no "identity of cause of action" between the Bogusz third-party complaint and this action. Cavenagh misstates the court's ruling in dismissing Bogusz's complaint; the circuit court never concluded that the complaint "did not allege fraud." In fact, the court did not even rule on the sufficiency of the allegations in Bogusz's amended third-party complaint. Moreover, this argument confuses the sufficiency of the allegations in Bogusz's complaint with the nature of those allegations. The court's ruling as to the specificity of allegations in the Bogusz suit (much less a ruling as to the timeliness of suit) says nothing about whether ISBA Mutual's policy covers the allegations in Bogusz's complaint.

¶ 23 Cavenagh next argues that the circuit court wrongly denied his motion for leave to file a second amended counterclaim, restating the count for breach of contract. The decision whether to allow or deny an amendment is a matter within the circuit court's discretion, and we will reverse only if the circuit court abused its discretion. *Seitz-Partridge v. Loyola University of Chicago*, 409 Ill. App. 3d 76, 86 (2011). In determining whether the court abused its discretion, we weigh the following factors: (1) whether the proposed amended complaint would cure defective pleadings; (2) whether the amendment would surprise or prejudice the opposing party; (3) whether the amendment was timely filed; and (4) whether the movant had previous opportunities to amend. *Id.* In this particular case, the first factor is dispositive. The sole basis for Cavenagh's second amendment to his counterclaim was the circuit court order dismissing Bogusz's third-party complaint, yet the amendment does nothing to cure the defects in the breach of contract claim. On appeal, Cavenagh argues that the dismissal of the third-party complaint "was the law of the case with respect to the third-party complaint." This argument, like the *res judicata* argument, wrongly assumes that ISBA Mutual's duty to defend rises and falls with the sufficiency of the pleading of the Bogusz complaint. As we have explained above, that is not the test for coverage. The court did not abuse its discretion in denying Cavenagh's motion for leave to file a second amended counterclaim.

¶ 24 Having found that the policy did not impose a duty to defend against the Bogusz suit, we conclude that the circuit court properly granted summary judgment to ISBA Mutual. We also affirm the dismissal of Cavenagh's breach of contract counterclaim. As with the duty to defend claim, all of Cavenagh's alleged breaches of the policy–failure to adequately investigate the claims, failure to independently review the claims, failure to defend when it knew or should have known that the allegations were false–presuppose coverage under the policy. For example, the "failure to investigate" claim assumes that if ISBA Mutual had investigated, it would have discovered that the complaint in fact alleged a "negligent act, error or omission" covered by the policy. The circuit court properly dismissed the breach of contract counterclaim.

¶ 25 Section 155 Claim and Estoppel Claim

¶ 26 Cavenagh's counterclaim also alleged that ISBA Mutual violated section 155 of the Insurance Code (215 ILCS 5/155 (West 2008)). Section 155 allows for "an extracontractual remedy" of attorney fees and costs for an insurer's "unreasonable and vexatious" refusal to comply with its policy obligations. *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 523-24 (1996); 215 ILCS 5/155(1) (West 2008). But "[w]here the policy does not apply, there can be no finding that the insurer acted vexatiously and unreasonably [in denying a claim]." *American Family Mutual Insurance Co. v. Fisher Development, Inc.*, 391 Ill. App. 3d 521, 533 (2009); see also *State Farm Mutual Automobile Insurance Co. v. Smith*, 197 Ill. 2d 369, 380 (2001) ("[W]here a *bona fide* dispute concerning coverage exists, costs and sanctions [under section 155] are inappropriate."); *Liberty Mutual Insurance Co. v. American Home Assurance Co.*, 368 Ill. App. 3d 948, 962 (2006) (finding that insurer's conduct was not vexatious or unreasonable where insurer denied coverage based on exclusion that court later determined was applicable). The policy here did not cover Bogusz's claim, and

Cavenagh's section 155 claim therefore was properly dismissed.

¶ 27    Cavenagh next argues that the circuit court erred in striking his affirmative defense for estoppel. A motion to strike an affirmative defense admits all well-pleaded facts constituting the defense, together with all reasonable inferences that may be drawn therefrom, and raises only a question of law as to the sufficiency of the pleading. *Bank of America, N.A. v. 108 N. State Retail LLC*, 401 Ill. App. 3d 158, 170 (2010). A court must consider whether the defendant has alleged facts sufficient to constitute a legally cognizable defense. *Id.*

¶ 28    "The general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured." *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150 (1999). The insurer has two options: (1) defend the suit under a reservation of rights, or (2) seek a declaratory judgment that there is no coverage. *Id.* "If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage." *Id.* at 150-51.

¶ 29    In this case, after ISBA Mutual refused to defend Cavenagh, it avoided any claim of estoppel by seeking a declaration that there was no coverage for the Bogusz suit. In any event, our supreme court has made clear that "[the] estoppel doctrine applies only where an insurer has breached its duty to defend" and "[a]pplication of the estoppel doctrine is not appropriate if the insurer had no duty to defend." *Id.* at 151. Where we have affirmed the circuit court's determination that ISBA Mutual had no duty to defend under the policy, we find no error in the circuit court's decision to strike Cavenagh's estoppel defense.


¶ 30                              Cavenagh's Tort Counterclaims
¶ 31                              *Breach of Fiduciary Duty*
¶ 32    Cavenagh argues that it was error for the circuit court to dismiss his breach of fiduciary duty claim. While it is settled law that "no fiduciary relationship exists between an insurer and an insured as a matter of law" (*Martin v. State Farm Mutual Automobile Insurance Co.*, 348 Ill. App. 3d 846, 850-51 (2004)), Cavenagh argues that a fiduciary duty arose out of special circumstances of his relationship with ISBA Mutual. A fiduciary duty by "special relationship" may arise where "one party places trust and confidence in another, thereby placing the latter party in a position of influence and superiority over the former." *Id.* at 851; *Fichtel v. Board of Directors of the River Shore of Naperville Condominium Ass'n*, 389 Ill. App. 3d 951, 963 (2009). " 'This position of superiority may arise by reason of friendship, agency, or experience.' " *Fichtel*, 389 Ill. App. 3d at 962 (quoting *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 500 (1996)).

¶ 33    The complaint does not allege, even in a conclusory fashion, that a special relationship existed between Cavenagh and ISBA Mutual. There is a single allegation in support of the existence of a fiduciary duty: "As a result of the relationship between ISBA Mutual and Cavenagh, where Cavenagh was not only an insured but also a potential defendant, ISBA Mutual owed a fiduciary duty to Cavenagh." Asserting that there is an insurer-insured relationship does not satisfy the standards for pleading a fiduciary duty by virtue of a special

-9-

relationship. "[T]he mere fact that a contract of insurance *** existed between the parties is insufficient to support a finding of a fiduciary relationship." *Martin*, 348 Ill. App. 3d at 851; see also *Ransom v. A.B. Dick Co.*, 289 Ill. App. 3d 663, 672 (1997) ( "[O]rdinarily in a business transaction each party guards his own interests and no fiduciary duty exists.").

¶ 34 The complaint is also devoid of any factual allegations that Cavenagh placed trust and confidence in ISBA Mutual by reason of friendship, agency, or experience. On appeal, Cavenagh claims that he "trusted that ISBA Mutual would never allow a frivolous third-party complaint to be filed against him because they [*sic*] knew he was also insured by ISBA Mutual," but this is nothing more than saying that the insurer-insured relationship existed. Cavenagh also argues that he trusted ISBA Mutual to "protect his financial well-being" and otherwise perform its duties under the policy. There are no specific factual allegations, however, giving rise to a relationship of trust or confidence. Nor would a bare allegation of trust be sufficient to state a cause of action. In *Martin*, for example, the court considered the insured's allegation that "trust" was placed in the insurer because the insurer told the insured that it would "take care of" the claim. *Martin*, 348 Ill. App. 3d at 850. The court noted that "[t]here [were] no allegations of a history of dealings or long-standing relationship between the parties, or that plaintiffs had entrusted the handling of their insurance affairs to [the insurer] in the past, or that [the insurer] was in a position of such superiority and influence by reason of friendship, agency, or experience." *Id.* at 851-52; see also *Magna Bank of Madison County v. Jameson*, 237 Ill. App. 3d 614, 619 (1992) ("The degree of trust and confidence can be established by the following factors: degree of kinship, age disparity, health, mental condition, education, business experience between the parties, and the extent of the reliance.").

¶ 35 Furthermore, even assuming that Cavenagh placed his trust in ISBA Mutual, there are no allegations from which we could infer that Cavenagh's "trust" put ISBA Mutual in a position of superiority and influence over Cavenagh. See *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 657 (2001) (holding that transaction between dealer and customer "did not possess sufficient indicia of disparity in experience or knowledge such that the dealer could be said to have gained influence and superiority over the purchaser"); *Fichtel*, 389 Ill. App. 3d at 963-64. To the extent that Cavenagh intended to claim a fiduciary duty arose from particular circumstances, "it was incumbent upon [him] to identify those circumstances and plead them with specificity." *Martin*, 348 Ill. App. 3d at 852. In the absence of any allegations establishing a fiduciary relationship, the circuit court did not err in dismissing Cavenagh's breach of fiduciary duty claim.

¶ 36 *Civil Conspiracy (Fraud)*

¶ 37 Cavenagh next challenges the dismissal of his "civil conspiracy" claim. "The elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill. 2d 302, 317 (2004). A conspiracy is not an independent tort. *Indeck North American Power Fund, L.P. v. Norweb PLC*, 316 Ill. App.

-10-

3d 416, 432 (2000). "Where *** a plaintiff fails to state an independent cause of action underlying [the] conspiracy allegations, the claim for a conspiracy also fails." *Id.*

¶ 38    While Cavenagh's complaint did not specify that his conspiracy claim was based on allegations of fraud, he now relies on the tort of fraud as the basis for the conspiracy claim. The elements of fraud are: " '(1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury.' " *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 529 (1996) (quoting *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 542-43 (1992)). In order to state a cause of action for common law fraud, the essential elements of fraud must be pleaded with specificity. *Id.*

¶ 39    Cavenagh alleged that the Bogusz complaint was a false statement made by ISBA Mutual to induce Cavenagh (and his client, Spilotro) to settle Spilotro's claim against Joniak for less than the full value. Even if we assume that there are specific factual allegations showing that the Bogusz complaint was a "false statement" attributable to ISBA Mutual, the complaint fails to include any factual allegations that Cavenagh actually relied on the Bogusz complaint or that this reliance led to his injury. The complaint contains no allegations that Cavenagh was induced to settle his claim or acted, to his detriment, based on Bogusz's allegations. In fact, Cavenagh repeatedly states that the Bogusz complaint was obviously frivolous and "patently defective," negating any claim that he relied on the complaint. Cavenagh also took immediate steps to obtain coverage and, when coverage was denied, obtain dismissal of the suit. These actions further establish that Cavenagh did not actually rely on the Bogusz suit or that any reliance led to his injury. *Cf. Trautman v. Knights of Columbus*, 121 Ill. App. 3d 911, 914-15 (1984) (finding insured did not plead reliance based on insurer's alleged forgery of policy amendment, where "plaintiff's accusations of forgery and her immediate steps to protect her rights under the contract clearly belie reliance on the amendment").

¶ 40    Cavenagh argues that reliance is established "by the fact that an insured relies upon an insurer to provide coverage that comports with Illinois law and is free from fraud and deceit." But this says nothing about the alleged statement by ISBA Mutual at issue here–the Bogusz complaint–or whether Cavenagh actually relied on it to his detriment. The allegations of reliance are based on "mere conclusions of law or fact unsupported by specific factual allegations." *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). Where Cavenagh failed to state an independent claim of fraud, the court did not err in dismissing Cavenagh's conspiracy claim.

¶ 41                                    Limitations on Discovery

¶ 42    Cavenagh next contends that after the dismissal of his counterclaim, the circuit court improperly limited discovery, impeding his ability to defend against ISBA Mutual's summary judgment motion.

¶ 43                              *Motion for Protective Order*

¶ 44         Cavenagh argues that the circuit court erred by granting ISBA Mutual's motion for a protective order barring Cavenagh from discovery. We review the circuit court's ruling for an abuse of discretion. *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54 (2002).

¶ 45         The only claim still at issue when Cavenagh issued his discovery requests was ISBA Mutual's breach of its duty to defend. "[W]here the issue is whether the insurer has a duty to defend, a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy." *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). In the few cases where courts have looked beyond the underlying complaint on a coverage question, the outside information came from pleadings or filed documents that affected whether the complaint's allegations fell within the policy language. For example, in *Pekin*, where the complaint against the insured alleged intentional acts, the court found that it was proper to examine the insured's counter-pleading, which suggested that the insured was acting in self-defense, because the policy contained a self-defense exception. *Id.* at 450-51. Similarly, in *Millers Mutual Insurance Ass'n of Illinois v. Ainsworth Seed Co.*, 194 Ill. App. 3d 888 (1989), the court examined the underlying complaint along with an affidavit from the insured's employee in order to resolve "confusion in the pleadings." 194 Ill. App. 3d at 890-93.

¶ 46         By contrast, here the discovery sought by Cavenagh had no effect on whether the allegations in the Bogusz complaint were covered by the policy. For example, Cavenagh sought discovery regarding "the rule on which ISBA Mutual made [the decision not to defend]" and "the extent of ISBA Mutual's knowledge of Konicek's acts in filing the third-party complaint." In contrast to *Pekin* and *Ainsworth*, the requested information has no bearing on whether the Bogusz complaint alleged a "negligent" act or whether the complaint alleged intentional acts beyond the policy's coverage. The court did not abuse its discretion in granting ISBA Mutual's motion for protective order.


¶ 47                                *Rule 201(k) Violation*

¶ 48         Cavenagh next argues that the court abused its discretion when it granted ISBA Mutual's motion for a protective order because ISBA Mutual did not comply with Illinois Supreme Court Rule 201(k). Ill. S. Ct. R. 201(k) (eff. July 1, 2002). Rule 201(k) requires that "[e]very motion with respect to discovery shall incorporate a statement that after personal consultation and reasonable attempts to resolve differences the parties have been unable to reach an accord." *Id.* This court has previously recognized that "strict technical compliance with Rule 201(k) is not required," however, "so long as the record reflects that the movant attempted to resolve his difficulties with his opponent prior to seeking judicial intervention in discovery matters." *Antkiewicz v. Pax/Indianapolis, Inc.*, 254 Ill. App. 3d 723, 729 (1993). Here, the circuit court heard ISBA Mutual and Cavenagh argue at length as to whether there was credible evidence that Bogusz's third-party complaint was the product of a conspiracy. Cavenagh's discovery requests were largely an attempt to resurrect those claims dismissed with prejudice, and the record suggests that any attempt to reach a compromise would have been futile. *Cf. Hartnett v. Stack*, 241 Ill. App. 3d 157, 174 (1993) (concluding that failure

to comply with Rule 201(k) was not fatal where the record showed that the parties were, in fact, "unable to reach an accord after reasonable attempts to resolve differences"). We therefore conclude that the circuit court did not abuse its discretion in considering the motion for protective order despite a technical violation of Rule 201(k).

¶ 49                    *Supreme Court Rule 191(b) Affidavit*

¶ 50    Cavenagh next contends that the circuit court incorrectly struck the Illinois Supreme Court Rule 191(b) affidavit he submitted in response to ISBA Mutual's summary judgment motion. Rule 191(b) provides, in relevant part:

> "If the affidavit of either party contains a statement that any of the material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his belief, the court may make any order that may be just, either granting or refusing the motion ***." Ill. S. Ct. R. 191(b) (eff. July 1, 2002).

¶ 51    In his affidavit, Cavenagh first argued that he could not intelligently respond to the motion for summary judgment without first obtaining documents and taking depositions regarding who made the decision to deny coverage and why and how the decision was reached. This is simply a restatement of Cavenagh's failed discovery requests. We have explained above that the discovery Cavenagh sought was not relevant to ISBA Mutual's obligation to defend under the policy.

¶ 52    Cavenagh also claimed that he needed additional discovery regarding a "discrepancy" between the language quoted in the summary judgment motion and the language contained in the policy first issued to Cavenagh. While it is true that the text of policy "IL 12/2007" did not exactly match the text of policy "IL 12/2005," there is no substantive difference in the coverage provisions. The changes are in form, replacing the pronouns "we" and "you" with the terms "the Company" and "the Insured." We agree with the circuit court that additional discovery would have served no constructive purpose.

¶ 53                    *Supreme Court Rule 191(a) Affidavit*

¶ 54    Cavenagh also argues that the circuit court improperly struck his Supreme Court Rule 191(a) affidavit. Rule 191(a) requires that an affidavit in opposition to a motion for summary judgment "shall be made on the personal knowledge of the affiants"; "shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based"; and "shall not consist of conclusions but of facts admissible in evidence." Ill. S. Ct. R. 191(a) (eff. July 1, 2002). "Rule 191(a) should be construed according to the plain and ordinary meaning of its language. Its provisions should be adhered to as written." *Robidoux v. Oliphant*, 201 Ill. 2d 324, 347 (2002). Cavenagh's affidavit clearly did not comply with the requirements set forth in Rule 191(a): the affidavit set forth unsupported assertions and conclusions, and the affidavit set forth allegations clearly beyond Cavenagh's personal knowledge. See *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 650-51 (2002) (" 'A court *must* disregard conclusions in affidavits when adjudicating a summary judgment motion.' [Citation.]"

-13-

(Emphasis in original.)); *In re E.L.*, 152 Ill. App. 3d 25, 31 (1987) (noting the "well established principle of law that *** documents [filed in support of] summary judgment must recite facts and not mere conclusions or statements based on information and belief"). The circuit court properly struck Cavenagh's Rule 191(a) affidavit.

¶ 55                                                  CONCLUSION

¶ 56        For the foregoing reasons, we affirm the circuit court's order dismissing Cavenagh's counterclaim and striking his affirmative defense of estoppel. We find no error in the court's discovery rulings. We also affirm the order granting summary judgment in favor of ISBA Mutual.

¶ 57        Affirmed.