Evelyn SHELLEY and Department of Health & Social Services, State of Wisconsin, Plaintiffs,

v.

Berta MOIR and Fire Insurance Exchange, Realty Management Corporation, a Wisconsin corporation, Guy D. Realtors, Inc., a/k/a Realty World, a Wisconsin corporation, and ABC Insurance Company, Defendants.

Berta MOIR and Farmers Insurance Exchange, Defendants and Third-Party Plaintiffs-Appellants,

v.

EVANSTON INSURANCE COMPANY, a foreign insurance corporation, Third-Party Defendant-Respondent,

REALTY MANAGEMENT CORPORATION, a Wisconsin corporation, Gabriele Nudo, Admiral Insurance Company, a foreign insurance corporation, The Travelers Indemnity Company, a foreign insurance corporation, and DEF Insurance Company, an insurance corporation, Third-Party Defendants.

Court of Appeals

*No. 86–0984. Submitted on briefs January 7, 1987.—Decided March 18, 1987.*

(Also reported in 405 N.W.2d 737.)

218

For the defendants and third-party plaintiffs-appellants the cause was submitted on the briefs of *Douglas J. Carroll* of *Arnold, Murray, O'Neill & Schimmel,* of Milwaukee.

For the third-party defendant-respondent the cause was submitted on the *Roger L. Wiedeback* and *Dorothy H. Dey* of *Prosser, Wiedabach & Quale, S.C.* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   Berta Moir and Farmers Insurance Exchange (Moir) appeal from the judgment dismissing their third-party complaint as to one of the third-party defendants, Evanston Insurance Company. The trial court held that Moir's claim arose out of a bodily injury and thus fell within an exclusion in the Evanston policy. We affirm, recognizing that Moir's claim is distinguishable from that of her injured tenant but holding that nonetheless it arose out of a bodily injury.

Moir owned an apartment building in Kenosha. On April 10, 1983, Moir's tenant, Evelyn Shelley, was allegedly injured when she fell on a stairway in the building. At the time, the property was managed by Realty Management Corporation pursuant to an agreement with Moir. Shelley sued Moir and Realty Management, claiming that they failed to erect or maintain a proper handrail on the stairway, keep up

the stair treads and landing and supply proper lighting on and about the stairway.

Moir, in turn, brought a third-party complaint against Realty Management and its insurers, including Evanston. The Evanston policy was a "Real Estate Agents and Brokers Professional Liability" policy, covering claims made during the period October 1, 1984 to October 1, 1985.[1] Moir claimed that Realty breached its management agreement and was negligent in its professional duties, with respect to maintenance and repair of the premises. The damages sought, according to Moir's complaint, "are measured by the amount of any damages she or her insurance company may be required to pay to the plaintiff [Shelley] for the plaintiff's bodily injuries, plus the costs of defense and interest."

Evanston moved for summary judgment, seeking dismissal of the third-party complaint as to Evanston on the ground, among others, that its policy excluded claims for bodily injury. The trial court granted Evanston's motion. It held that the "triggering event" giving rise to Moir's claim was the bodily injury suffered by Shelley and that "the Evanston policy ... excludes any claim made against it based upon bodily injury of any person."

Moir contends on appeal that the bodily injury exclusion is not controlling because her claim is not for bodily injury but for breach of contract and negligence in the performance of professional services.

[1]Evanston contends, as an alternate ground for affirmance, that its "claims-made" policy excludes coverage where, as it argues was the case here, the insured had notice of the circumstances giving rise to the claim before the policy's effective date. We need not reach this issue, since we affirm based on the exclusion for claims arising out of bodily injury.

Construction of an insurance policy is a question of law which we review without deference to the trial court's decision. *Katze v. Randolph & Scott Mut. Fire Ins. Co.,* 116 Wis. 2d 206, 212, 341 N.W.2d 689, 691 (1984). In interpreting and construing an insurance contract, the object is to ascertain the true intention of the parties; however, objective rather than subjective intent is the test. *Bertler v. Employers Ins.,* 86 Wis. 2d 13, 17, 271 N.W.2d 603, 605 (1978).

The intended role of the coverage should be kept in mind when construing policy language; the nature and purpose of the policy as a whole have an obvious bearing on the insured's reasonable expectations as to scope of coverage and on whether the risk involved was, or should have been, contemplated by the insurer in computing its rates. *See id.* at 18–19, 271 N.W.2d at 606. Ambiguities in an insurance contract are to be resolved against the insurer who drafted it and in favor of the insured, but where no such ambiguity exists the rule of strict construction against insurers does not apply. *Id.* at 17, 271 N.W.2d at 605. Furthermore, while policy provisions tending to limit liability must be construed against the insurer, a policy may not be construed to bind the insurer to a risk which it did not contemplate and for which it received no premium. *Bartel v. Carey,* 127 Wis. 2d 310, 314–15, 379 N.W.2d 864, 866 (Ct. App. 1985).

We conclude that the relevant policy language is not ambiguous. The Evanston policy provides coverage for loss "which the Insured shall become legally obligated to pay ... by reason of any act, error or omission in professional activities as a REAL ESTATE

AGENT OR BROKER rendered or that should have been rendered by the Insured." The policy defines real estate agent or broker professional activities as including property management.[2] The policy, however, contains an exclusion stating that the policy shall not apply "to any claim based upon or arising out of bodily injury, sickness, disease or death of any person."[3]

The term "arising out of," in the context of an insurance policy, is ordinarily understood to mean originating from, growing out of or flowing from; all that is necessary is some causal relationship. *Bartel,* 127 Wis. 2d at 315, 379 N.W.2d at 867.

■

We agree with the trial court that the exclusion applies here to defeat Moir's claim against Evanston. While we recognize that Moir's suit is not for *her* bodily injuries in the conventional sense, and is Moir's own cause of action, separable from Shelley's action for bodily injuries, we conclude it is "based upon or

---

[2]Repair and maintenance of property might not normally be considered "professional services," commonly defined as acts or services involving specialized knowledge, labor or skill which is predominantly mental or intellectual rather than physical or manual. *See, e.g., Bank of Cal. N.A. v. Opie,* 663 F.2d 977, 981 (9th Cir. 1981). Since, however, the insurance contract defines professional activities to include "property management" without further qualification, and since Evanston has not argued that its policy was not intended to cover losses arising out of repair and maintenance as a subset of property management, we assume for the purposes of this opinion that the policy may cover at least some potential losses arising out of the insured's maintenance and repair activities under a property management contract.

[3]This language, found in the policy's Lock Box Liability Endorsement, replaces standard exclusion 1(a) which states in part that the policy shall not apply to any claim against the insured *for* bodily injury, sickness, disease or death.

arising out of" *a* bodily injury. Although Moir strenuously characterizes her suit as one for breach of contract and negligence,[4] it is self-evident that except for any obligation arising out of Shelley's injuries, Moir has suffered, and pled, no damages by any such alleged breach or negligence.[5] Thus, Moir asserts no claim not inextricably linked to the accident involving Shelley.

Not only is no claim asserted by Moir for damages unrelated to Shelley's injuries, but no claim is asserted for damages resulting from, *but additional to,* Shelley's injuries. Therefore, *Sola Basic Industries, Inc. v. United States Fidelity & Guaranty Co.,* 90 Wis. 2d 641, 645–54, 280 N.W.2d 211, 213–17 (1979), cited by Moir, is inapplicable. *Sola* involved a comprehensive general liability policy which excluded coverage for damage to the products furnished by the insured. The supreme court held that further injury arising out of such damage, such as the costs associated with removing and replacing the damaged product and increased costs of operations while the product was being repaired, would be covered under the policy. *Id.* at 654, 280 N.W.2d at 217.

---

[4]Moir contends that the allegations of her complaint are determinative of whether her claim falls within policy coverage. While this is true as to an insurer's duty to defend, *see Grieb v. Citizens Casualty Co.,* 33 Wis. 2d 552, 557–58, 148 N.W.2d 103, 106 (1967), the issue here is not duty to defend but ultimate coverage.

[5]Hypothetical damages to Moir resulting from any failure by Realty to properly repair or maintain the property, but not arising out of bodily injury, might, for example, include the cost of repairs or replacement necessitated by failure to maintain or simply moneys paid to Realty for which Moir received no corresponding benefit.

The circumstances here do not involve damages resulting from and additional to the damages suffered by Evelyn Shelley;[6] they involve the very same damages, simply sought by a different party under a different theory. If Moir must compensate Shelley for her injuries, she wants Realty and Evanston, in turn, to compensate her. Shelley, clearly, could not recover for her injuries from Evanston because of the bodily injury exclusion. To hold that Moir can recover from Evanston the damages she may be required to pay for Shelley's injuries would circumvent the exclusion and bind Evanston to a risk which it did not contemplate[7] and for which it received no premium. *See Bartel,* 127 Wis. 2d at 314–15, 379 N.W.2d at 866.

We therefore affirm the judgment dismissing Evanston from Moir's third-party suit.

*By the Court.*—Judgment affirmed.

---

[6]Such damages, for example, might hypothetically include loss of rent because prospective tenants, having learned of the accident, decided not to rent from the owner.

[7]That Evanston could not have anticipated coverage for Moir's claim, and that Realty Management probably did not contemplate such coverage, is buttressed by the express provision in Realty's management agreement requiring the owner (here, Moir) to save Realty harmless for all suits for damages in connection with the management of the building and from liability for injuries suffered by any person on the premises, and to carry public liability insurance on the property.