In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-2571

CRUM & FORSTER SPECIALTY INSURANCE
COMPANY,

*Plaintiff-Appellee,*

*v.*

DVO, INC., formerly known as GHD,
Inc.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:16-cv-01619-WCG — **William C. Griesbach,** *Chief Judge.*

ARGUED JANUARY 16, 2019 — DECIDED SEPTEMBER 23, 2019

Before BAUER, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* This appeal arises from a diversity
action for declaratory relief brought by Crum & Forster Spe-
cialty Insurance Company ("Crum") against GHD Inc., now
known as DVO Inc. ("DVO"), seeking a determination that
Crum does not have a duty to defend DVO in a state court
action filed against DVO. Crum provided insurance to DVO,

and the question is whether the Errors & Omissions ("E&O") coverage of the primary and excess insurance policies it provided to DVO, along with any exceptions in the policies, covers the state court claim for a contract violation such that it imposes a duty for Crum to defend DVO in that action.

The underlying contract claim was brought by WTE-S&S AG Enterprise, LLC ("WTE") against DVO. DVO designs and builds anaerobic digesters, which use microorganisms to break down biodegradable materials to create biogas. DVO and WTE entered into a Standard Form Agreement, created by the Engineers Joint Contract Documents Committee, under which DVO was to design and build an anaerobic digester for WTE. The digester was to be used to generate electricity from cow manure which would then be sold to the electric power utility. WTE sued DVO for breach of contract, alleging that DVO failed to fulfill its design duties, responsibilities, and obligations under the contract in that it did not properly design substantial portions of the structural, mechanical, and operational systems of the anaerobic digester, resulting in substantial damages to WTE. It sought over $2 million in damages and fees.

Crum initially provided a defense to DVO under a reservation of rights, but a couple of months later advised DVO that it would no longer provide a defense. WTE later filed for bankruptcy and the case was transferred to the United States Bankruptcy Court for the Northern District of Illinois. Following a trial, that court found in favor of WTE and ordered DVO to pay over $65,000 in damages and $198,000 in attorney's fees.

Crum issued primary and excess insurance policies to DVO for periods of time spanning from June 2011 until April

2014. Those policies provided coverage including commercial general liability (CGL) coverage, pollution liability coverage, E&O coverage, third party pollution coverage, and onsite cleanup liability coverage. The issue in this appeal concerns two provisions. The first is the provision in the E&O professional liability coverage, under which Crum is required to pay "those sums the insured becomes legally obligated to pay as 'damages' or 'cleanup costs' because of a 'wrongful act' to which this insurance applies." Dist. Ct. Decision and Order ("Dist. Ct.") at 3. The second relevant provision is the breach of contract exclusion that was added by an endorsement, which provides that the Policy does not apply to claims or damages based upon or arising out of breach of contract. *Id*. DVO argued that the breach of contract exclusion was so broad as to render the E&O professional liability coverage illusory, and therefore could not be enforced to preclude the duty to defend. The district court held that the professional liability coverage was not illusory because it would still apply to third party claims, and that even if it was determined to be illusory, the remedy would be to reform the contract to allow coverage to third party claims, not to allow coverage for all professional liability claims.

A determination of a duty to defend under an insurance policy involves a three-part inquiry: first, whether the type of claim asserted against DVO is the type for which coverage is provided by the policy; second, whether an exclusion provision in the policy precludes coverage; and third, if an exclusion applies, whether that exclusion contains any exceptions that would reinstate coverage. *Marks v. Houston Cas. Co.*, 881 N.W.2d 309, 322–23 (Wis. 2016); *Am. Family Mut. Ins. Co. v. American Girl, Inc.*, 673 N.W.2d 65, 73 (Wis. 2004). There is no disagreement as to the first part. The state court claim against

DVO involves allegations that DVO entered into a contract with WTE to construct an anaerobic digester which would generate electricity from cow manure, and that DVO failed to fulfill its design duties because it did not properly design substantial portions of the structural, mechanical, and operational systems of the anaerobic digester causing damages. Under the E&O coverage of the primary and excess insurance policies from Crum to DVO, Crum agreed to pay those sums that the insured becomes legally obligated to pay as damages or cleanup costs because of a wrongful act to which the insurance applies. "Wrongful act" is defined to include a failure to render professional services, and "professional services" is defined as "those functions performed for others by you or by others on your behalf that are related to your practice as a consultant, engineer, [or] architect … ." Such a provision is a common one, and essentially provides coverage for professional malpractice. See *Marks*, 881 N.W.2d at 324, quoting *Grieb v. Citizens Cas. Co. of New York*, 148 N.W.2d 103, 106 (Wis. 1967) ("[a]n errors-and-omissions policy is professional-liability insurance … designed to insure members of a particular professional group from liability arising out of the special risk such as negligence, omissions, mistakes and errors inherent in the practice of the profession"); *1325 North Van Buren, LLC v. T-3 Group. Ltd.*, 716 N.W.2d 822, 836 n. 13 (Wis. 2006) (same). All parties agree that the alleged conduct here falls within that provision.

The parties also agree, however, that the exclusion clause added as an endorsement to the contract, applies to preclude coverage. That provision states that:

> This Policy does not apply to "damages**"**, "defense expenses", "cleanup costs", or any loss, cost or expense, or any "claim" or "suit":
>
> Based upon or arising out of:
>
> a. breach of contract, whether express or oral, nor any "claim" for breach of an implied in law or an implied in fact contracts [sic], regardless of whether "bodily injury", "property damage", "personal and advertising injury" or a "wrongful act" is alleged.

Appellant's Appendix ("App.") A116-A119.

The parties do not dispute that a determination of whether that exclusion applies must focus on the incident that allegedly gave rise to the coverage, not the theory of liability. That is consistent with Wisconsin caselaw. For instance, the Wisconsin Supreme Court in *1325 North Van Buren*, rejected the argument that insurance liability is dependent on a theory of liability, and noted that claims of negligence in the failure to provide competent professional services could raise both tort and contract claims. 716 N.W.2d at 838. Therefore, even a claim that purports to be a tort claim can be excluded under the breach of contract exclusion if it arises out of that contract. Here, the state court complaint against DVO alleged that DVO was contracted to design and construct the anaerobic digester and, because of its faulty design, damages were incurred. That alleged a claim that arose out of the contract and therefore falls within the exclusion language.

The sole issue, then, is whether the language in that breach of contract exclusion renders the exclusion broader than the grant of coverage, and therefore renders the coverage illu-

sory. "In the insurance context, '[i]llusory policy language defines coverage in a manner that coverage will never actually be triggered.'" *Marks*, 881 N.W.2d at 328, (quoting *Continental Western Ins. Co. v. Paul Reid, LLP*, 715 N.W.2d 689, 691 (Wis. App. 2006)). If the purported coverage in a policy proves to be illusory, a court may reform the policy to meet the insured's reasonable expectation of coverage. *Id*. Such contract reformation, however, is an extraordinary remedy not lightly taken. *Id*.

The district court rejected the argument that the coverage was illusory. It held that although coverage for professional malpractice would effectively fall within that exclusion as to claims alleged by the party to the contract, third parties could still bring tort claims against DVO that would not fall within the exclusion and would trigger the duty to defend in the E&O provision of the policy. The district court reasoned that as a contractor, designer, engineer and builder, DVO has a duty to use reasonable care in carrying out its contractual obligation so as to avoid injury or damage to the person or property of third parties, even though they have no contractual relationship with DVO.

But that analysis cannot support the court's conclusion. If more narrow language was used, the district court's determination that third-party liability would still be covered might have merit. But the language in the exclusion at issue here is extremely broad. It includes claims "based upon *or arising out of*" the contract, thus including a class of claims more expansive than those based upon the contract. Wisconsin courts have made clear that the "arising out of" language is broadly construed. For instance, in *Great Lakes Beverages, LLC v. Wochinski*, 892 N.W.2d 333, 339 (Wis. App. 2017), the court

held that "the phrase '"arising out of" in an insurance policy is very broad, general and comprehensive and is ordinarily understood to mean originating from, growing out of, or flowing from.'" (quoting *Trumpeter Developments v. Pierce County*, 681 N.W.2d 269, 271 (Wis. App. 2004)); accord *Shelley v. Moir*, 405 N.W.2d 737, 739 (Wis. App. 1987). All that is required is some causal relationship between the injury and the event not covered. *Id*.

That same language has been applied by Wisconsin courts to exclude coverage for third-party claims. For instance, in *Great Lakes Beverages*, the court considered whether AMCO Insurance's policies providing coverage for personal and advertising injuries, including libel and slander, required coverage of Wochinski's tortious interference claim which was based on the allegation that Great Lakes Beverages was falsely informing people that Wochinski was subject to a non-compete agreement. 892 N.W.2d at 339-40. The insurance policy excluded any advertising or personal injury arising out of a breach of contract, and the court held that the exclusion barred coverage even though Wochinski had never had a contract with Great Lakes Beverages. *Id*. The court held that the tortious interference claim arose out of a breach of contract because the truth or falsity of the representations depended on whether the non-compete agreement in the contract between Wochinski and another party remained in effect. *Id*. Therefore, *Great Lakes Beverages* held that the "arising out of" language in the exclusion is read broadly, and that it can be applied to bar a tort claim brought by a third party. See also *Shelley*, 405 N.W.2d at 739-40 (exclusion for claims arising out of bodily injury operated to exclude third-party breach of contract claim).

Under Wisconsin law, therefore, the term "arising out of" has been interpreted broadly to reach any conduct that has at least some causal relationship between the injury and the event not covered, which sweeps in third-party claims as well when so related. And the "event not covered" in the policy here is itself quite expansive, explicitly applying the breach of contract exclusion to all contracts whether express or oral, and even including contracts implied in law or fact. Given that broad language, the exclusion would include even the claims of third parties. As to those third parties, the claims of professional negligence will fall within the contract exclusion because they necessarily arise out of the express, oral or implied contract under which DVO rendered the professional services. See *1325 North Van Buren*, 716 N.W.2d at 838 (noting that the claim based on a negligent act for its failure to adhere to professional standards is one sounding in negligence but arising in the context of a contract); *Colton v. Foulkes*, 47 N.W.2d 901, 903 (1951) (the contract creates the state of things which furnishes the occasion of the tort).

To avoid that conclusion, Crum relies primarily on an unpublished Wisconsin appellate court opinion in *General Casualty Co. of Wisc. v. Rainbow Insulators, Inc.*, 798 N.W.2d 320 (Wis. App. 2011). In that case, KBS filed a complaint for breach of contract against E & A Enterprises ("E & A"). E & A had contracted to handle metal stud framing and drywall for a condominium project and E & A created noise problems in the units by attaching resilient channels to drywall in the wrong direction and by using screws that were too long, which caused acoustical problems and required KBS to remove and reinstall the channels. *Id*. at *1.

The court considered whether Acuity, an insurance company, had a duty to provide coverage. E & A had a professional liability policy with Acuity called the Contractor's Error & Omissions Coverage which provided coverage for "damages because of property damage to your product, property damage to your work, property damage to impaired property or recall expense that arises out of your product, your work, or any part thereof." *Id*. at *6-7. The court held that the policy provided initial coverage, but held that such coverage was precluded under the "contract" exclusion, which excludes coverage for "damages arising out of any … [d]elay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." *Id*. at 7. E & A argued that the contract exclusion was inapplicable because the alleged property damage arose out of negligent acts, errors, or omissions. *Id*. The court held, however, that the characterization of the claim was not dispositive; it further held that the conduct alleged in the complaint, if proven, would constitute failure to perform a contract, and therefore the exclusion applied. *Id*. The court rejected the argument that such an interpretation would render the policy useless, holding that the exclusion did not exclude all claims of any sort that might arise during the course of the work performed under a contract. The court as an example stated that "because contractors owe common law duties of care to those with whom they contract, as to all other persons, the 'contract' exclusion would not operate to preclude E & O policy coverage arising from a tort claim that involves conduct that is not a delay or failure to perform under a contract term." *Id*. at 8.

Crum relies on that case as support for the notion that the exclusion does not render the coverage illusory here, but the comparison is a faulty one. First, the coverage provision was

different in *General Casualty* in that it covered property dam-
age not professional malpractice generally. The overlap be-
tween claims of professional malpractice and breach of con-
tract is complete, because the professional malpractice neces-
sarily involves the contractual relationship. Moreover, the ex-
clusion was more narrow in *General Casualty*. It applied only
to damages arising out of delays or failures to perform a con-
tract or agreement *in accordance with its terms.* Thus, the exclu-
sion was tied to the terms of the contract, and would not nec-
essarily include conduct that was merely causally related to
the contract or which flowed from the contract as here. Fi-
nally, the court's analysis of the issue as to whether the cov-
erage was illusory was limited to a couple of sentences, with
no further development of the reasoning, and even inter-
preted as broadly as Crum argues, we do not find it persua-
sive in light of the other, published Wisconsin cases consid-
ered above.

Based on that Wisconsin caselaw, we hold that the breach
of contract exclusion in this case rendered the professional li-
ability coverage in the E&O policy illusory. The district court
recognized that possibility as well, but held that the contract
could be reformed so as to avoid that impact. Specifically, the
court held that if the policy was read so as to preclude such
third-party suits, then the exclusion would render the cover-
age illusory and the contract should be reformed so as to al-
low such suits. The court held, however, that such a refor-
mation would not help DVO because the state court suit was
not brought by a third party.

That focus on third-party suits is misplaced in the context
of the contract reformation here. The court itself raised the
possibility that third-party suits might not be excluded under

the language of the breach of contract exclusion, in an effort to demonstrate that the professional liability coverage was not therefore illusory (in that it provided coverage for third-party suits). As we have held above, that conclusion is inconsistent with the broad "arising out of" language, which would exclude all claims for professional liability whether or not brought by third-parties.

When a policy's purported coverage is illusory, the policy may be reformed to meet an insured's reasonable expectation of coverage. *Marks*, 881 N.W.2d at 328. Therefore, the focus now is not on the hypothetical third-party actions, but on the reasonable expectation of coverage of the insured in securing the policy. There is, after all, no reason to believe that DVO in purchasing Errors and Omissions coverage to provide insurance against professional malpractice claims had a reasonable expectation that it was obtaining insurance only for claims of professional malpractice brought by third parties.

In determining the reasonable expectation of the insured, we consider the intended role of the coverage. *Tri City Nat. Bank v. Fed. Ins. Co.*, 674 N.W.2d 617, 620 (Wis. App. 2003). "[T]he nature and purpose of the policy as a whole have an obvious bearing on the insured's reasonable expectations as to the scope of coverage … ." *Id.*, quoting *Shelley*, 405 N.W.2d at 739. As we noted earlier, "[a]n errors-and-omissions policy is professional-liability insurance … designed to insure members of a particular professional group from liability arising out of the special risk such as negligence, omissions, mistakes and errors inherent in the practice of the profession." *Marks*, 881 N.W.2d at 324, (quoting *Grieb*, 148 N.W.2d at 106); *1325 North Van Buren*, 716 N.W.2d at 836 n. 13 (same). Accordingly,

because the breach of contract exclusion renders the professional liability coverage illusory, the contract should be reformed so as to meet the reasonable expectations of DVO as to the E&O policy's coverage for liability arising out of negligence, omissions, mistakes and errors inherent in the practice of the profession. See *Marks*, 881 N.W.2d at 329 (noting that if coverage is rendered illusory, "our task would be to reform the policy so that it 'conform[s] to [the] real intent' of the parties; that is, to reform the policy so that it represents the 'definite and explicit agreement' originally reached by the parties before any mistake occurred. … If a clause in Marks' policy renders the policy illusory, we consider whether to reform that clause.")

The breach of contract exclusion is set forth in an endorsement. The endorsement modifies the insurance provided under the following Parts:

    Commercial General Liability Coverage Part

    Contractors Pollution Liability Coverage Part

    Errors and Omissions Liability Coverage Part

    Third Party Pollution Liability Coverage Part

    Onsite Cleanup Coverage Part

App. at A119. As such, it replaces the standard Contractual Liability provision. Because the breach of contract exclusion renders only the E&O coverage illusory, one possible reformation would be to delete the applicability of the endorsement only as to the E&O Part, and contractual liability under that Part would then revert back to the terms of the original Contractual Liability provision.

But we need not determine precisely what reformation is appropriate here. DVO did not file a cross-motion for summary judgment. The district court on remand may consider DVO's reasonable expectations in securing the coverage, and can reform the contract so as to give effect to that expectation. The focus, however, must be on that reasonable expectation, which was upended by the breach of contract exclusion that rendered it illusory. The availability of third-party claims is irrelevant unless it is determined to be a part of DVO's reasonable expectation of coverage.

The decision of the district court is REVERSED and the case REMANDED for further proceedings consistent with this opinion.