In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 24-1056

PHILADELPHIA INDEMNITY INSURANCE COMPANY,
*Plaintiff-Counter Defendant-Appellee,*

*v.*

BELLIN MEMORIAL HOSPITAL,
*Defendant-Cross Defendant/Counter Claimant-Appellee,*

*v.*

KINSEY & KINSEY, INC.,
*Defendant-Cross Claimant/Counter Claimant-Appellant,*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-02246 — **Steven C. Seeger**, *Judge.*

_____

ARGUED SEPTEMBER 27, 2024 — DECIDED JANUARY 14, 2025

_____

Before BRENNAN, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges*.

BRENNAN, *Circuit Judge*. Bellin Memorial Hospital, Inc. decided to upgrade its computer software. It hired Kinsey & Kinsey, Inc., a software consulting company, to assist. That

relationship turned sour when Kinsey failed to implement the agreed-upon software. In response, Bellin sued Kinsey in Wisconsin state court for breach of contract, among other claims. Bellin also sued that company's president, Brad Kinsey, and a senior product consultant, Brian Thome. Kinsey's insurer, Philadelphia Indemnity Insurance Company, provided a defense for all three under a professional liability insurance policy.

During trial, Bellin and Philadelphia Indemnity entered into a partial settlement (the "Thome Settlement," named after the Kinsey consultant), resolving some of the claims. The settlement also specified if and how much Bellin could collect in damages it obtained at trial from its remaining claims against Kinsey. Bellin prevailed at trial and was awarded damages which it has repeatedly tried to collect. But Philadelphia Indemnity, raising the Thome Settlement, filed this declaratory judgment action to thwart Bellin's attempts.

Bellin argues the Thome Settlement expressly permits recovery for claims not covered by Kinsey's insurance policy. In other words, Bellin submits that the settlement with Philadelphia Indemnity cannot prevent the hospital from recovering on a claim that the insurer is not required to indemnify. The district court agreed with Bellin, and we affirm.

## I.

### A.  The Agreement

Nearly a decade ago, Bellin decided to upgrade its human resources and business management system to "something new and improved." It settled on Integrated Solution software from Infor Lawson, specifically for the capabilities and functionality provided by its Global HR program. Unfamiliar with

Infor Lawson's products, Bellin issued a request for proposal to potential consulting companies familiar with implementing the software. After months of negotiations, Bellin selected Kinsey and memorialized their working relationship in a Master Service & Support Agreement (the "Agreement"). Kinsey agreed to complete the services listed in the Agreement and various addenda called Statements of Work. These documents clarified that Kinsey would install Global HR and train Bellin's employees to use the software.

When training began, Bellin employees noticed that the software screens looked different than the version they had seen when Infor Lawson demonstrated the capabilities of Global HR. Kinsey's senior product consultant, Brian Thome, assured them that Bellin could change the look of the software after the software went live in September 2016. But a few weeks before the expected launch date, a Kinsey employee informed Bellin that Kinsey had not implemented Global HR. Instead, Kinsey configured an older software called S3, which is incompatible with Global HR. Before this confession, Bellin alleges that Kinsey never mentioned its failure to implement Global HR.

Bellin requested a meeting with Kinsey's President, Brad Kinsey, to discuss the failure and possible remedies. Brad Kinsey responded with a new proposal offering to implement Global HR for an additional fee and a new launch date by December 2017. Kinsey admitted that an issue arose while implementing Integrated Solution but characterized it as "relatively minor." From Kinsey's perspective, Bellin would "not cooperate" to resolve the issue.

### B. Litigation in State Court

Bellin rejected the new proposal and sued Kinsey, Brad Kinsey, and Brian Thome in Wisconsin circuit court. Bellin brought three claims against each of the defendants: (1) intentional misrepresentation; (2) negligent misrepresentation; and (3) misleading representation in violation of Wisconsin's Deceptive Trade Practices Act, Wis. Stat. § 100.18(1). Bellin also brought a breach of contract claim against Kinsey alone.

Philadelphia Indemnity entered the litigation in support of all three defendants under a professional liability insurance policy. The policy required the insurer to cover all claims "arising out of a wrongful act" for which Kinsey or any person for whom Kinsey is legally responsible would become obligated to pay as damages. The policy defined a wrongful act as a "negligent act, error, or omission" committed while providing professional services. The policy excluded from coverage claims arising out of Kinsey's intentional actions.

From the start, a key question in the litigation was whether Kinsey intentionally breached the Agreement with Bellin. Before trial, the defendants moved for a declaration that a limited liability provision in the Agreement restricted Bellin's potential recovery to $100,000. The state court ruled that the limited liability provision did not apply to situations where Kinsey materially breached the terms of the Agreement. When the case proceeded to a jury trial, Bellin moved for a directed verdict on the breach of contract claim against Kinsey. The state court granted the motion but left the question of damages to the jury.

That weekend, Bellin and Philadelphia Indemnity negotiated the Thome Settlement, releasing Thome and the insurer

from all liability in exchange for the insurer paying $1 million to Bellin. But the settlement did not release Kinsey or Brad Kinsey.

Claims against those defendants continued at trial. The Thome Settlement also contained a set-off provision that specified the circumstances in which Philadelphia Indemnity could apply the $1 million settlement to the claims against Kinsey and Brad Kinsey. If Bellin prevailed on a claim covered by the insurance policy, then the set-off would be triggered. But if the claim was not covered by the insurance policy, then the set-off would not apply and Bellin could recover the entire amount of the judgment.

When trial resumed, Bellin moved to dismiss its negligent misrepresentation claim against Kinsey and Brad Kinsey. By voluntarily dismissing that claim, only claims not covered under the insurance policy went forward. That meant the set-off provision under the Thome Settlement would not apply to the judgment and Bellin would be able to recover the full amount of the judgment from Kinsey. The Thome Settlement thus effectively limited Philadelphia Indemnity's responsibility to $1 million and shifted any further liability to Kinsey.

The jury ultimately awarded Bellin $1.39 million in damages on the breach of contract claim. The state court later reduced that award to $750,000 plus costs. The jury also found Kinsey and Brad Kinsey not liable for intentional misrepresentation and misleading representation in violation of Wisconsin's Deceptive Trade Practices Act.

### C. Litigation in Federal Court

With the state court's judgment in hand, Bellin took steps to collect its award. In response, Philadelphia Indemnity filed

this declaratory judgment action, naming Bellin as a defendant and Kinsey as a nominal defendant. The insurer asked for a declaration that the state court's judgment is covered by the insurance policy, the set-off provision applies, and the $1 million settlement offsets the $750,000 judgment. Kinsey brought a counterclaim, making the same allegations and seeking the same relief.

Bellin responded with its own counterclaim, alleging Philadelphia Indemnity breached the Thome Settlement. Bellin requested a declaration that the insurance policy does not cover the state court judgment and that the set-off provision does not apply. The district court ruled for Bellin, concluding that it had prevailed in state court on a claim not covered by the insurance policy and therefore can recover the full amount of the judgment, notwithstanding the settlement.

## II.

This appeal presents a contract interpretation question buried beneath layers of litigation. At issue is whether the state court's judgment is a "covered claim" within the meaning of Kinsey's insurance policy with Philadelphia Indemnity. If the state court judgment is a covered claim, then the $1 million set-off negotiated in the Thome Settlement applies. This means that Kinsey does not owe Bellin the balance of the state court judgment, as the $750,000 judgment is a lower amount than the $1 million set-off. But if the state court judgment is not a covered claim, then the $1 million set-off does not apply, and Bellin has a right to recover the full amount of the judgment.

Kinsey believes that the state court judgment is a covered claim. So, Kinsey appeals the district court's grant of

judgment on the pleadings for Bellin and against Philadelphia Indemnity, its dismissal of Kinsey's crossclaim against Bellin, and its dismissal of Kinsey's counterclaim against the insurance company.

We review de novo the district court's grant of motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and motions to dismiss under Rule 12(b)(6). *ADM All. Nutrition, Inc. v. SGA Pharm. Lab'y Inc.*, 877 F.3d 742, 746 (7th Cir. 2017); *see also Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) ("The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same.").[1]

### A. Policy's definition of a wrongful act

Kinsey's insurance policy with Philadelphia Indemnity covers liabilities arising from its "wrongful act," which the policy defines as "a negligent act, error, or omission

---

[1] In this diversity action, Philadelphia Indemnity Insurance Company is incorporated and has its principal place of business in Pennsylvania, Kinsey & Kinsey, Inc. is incorporated and has its principal place of business in Illinois, and Bellin Memorial Hospital, Inc. is incorporated and has its principal place of business in Wisconsin. The amount in controversy is $750,000, plus costs and interest, which exceeds the statutory minimum of $75,000. 28 U.S.C. § 1332(a). A federal court exercising diversity jurisdiction over state-law claims applies the choice-of-law rules of the state in which it sits. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020) (citing *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941)). Here, the forum state is Illinois, which applies its own law "unless an actual conflict with another state's law is shown." *Id.* (citing *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 14). On the questions this case presents, no material difference exists between the law of Illinois and the law of Wisconsin, and the parties do not dispute choice of law. So, like the district court, we apply Illinois law.

committed or alleged to have been committed by [Kinsey] …
in the rendering of professional services." The district court
interpreted this definition to cover only negligence. The court
gave two reasons.

First, it relied on the series-qualifier canon, which pro-
vides that a modifier beginning a "series of terms modifies all
the terms." *United States v. Laraneta*, 700 F.3d 983, 989 (7th Cir.
2012). For the canon to apply, the terms must appear in a
"straightforward, parallel construction." *Facebook, Inc., v.
Duguid*, 592 U.S. 395, 402 (2021) (quoting ANTONIN SCALIA &
BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF
LEGAL TEXTS 147 (2012)). As the syntax in this definition is
"straightforward" and "parallel," the district court concluded
that the most natural reading is for the term "negligent" to
modify each of "act," "error," and "omission." *Id.* at 403 (The
series-qualifier canon captures a sentence's "most natural
reading.").

Second, the district court cited to one published Illinois
state court decision and two unpublished federal district
court decisions that confronted the same language and
reached the same interpretation. *See Ill. State Bar Ass'n Mut.
Ins. Co. v. Cavenagh*, 2012 IL App (1st) 111810, ¶ 18 (holding
that negligent modifies each of "act," "error," and
"omission," consistent with decisions from federal courts and
the Illinois Appellate courts); *TIG Ins. Co. v. Joe Rizza Lincoln-
Mercury, Inc.*, No. 00 C 5182, 2002 WL 406982, at *9 (N.D. Ill.
Mar. 14, 2002) ("It would be illogical for an endorsement to
limit coverage to negligent acts, but to provide coverage for
intentional omissions or errors."); *Cambridge Mut. Fire Ins. Co.
v. 1347–49 N. Sedgwick Condo. Ass'n*, No. 12 C 878, 2013 WL
271222, at *4 (N.D. Ill. Jan. 23, 2013) (same).

Kinsey disagrees. It says its policy covers damages arising out of "negligent acts," "errors," and "omissions." Such an errors-and-omissions policy, Kinsey says, is "designed to insure members of a particular professional group from liability arising out of the special risk such as negligence, omissions, mistakes and errors inherent in the practice of the profession." *Crum & Forster Specialty Ins. Co. v. DVO, Inc.*, 939 F.3d 852, 854–55 (7th Cir. 2019) (quoting *Marks v. Houston Cas. Co.*, 2016 WI 53, ¶ 46). In other words, both intentional and negligent errors and omissions are covered under the policy.

But Kinsey's interpretation of the wrongful act definition is inconsistent with the series-qualifier canon, common English syntax, and the decisions of other courts to have considered similar language.

### 1. *Canons*

The district court correctly concluded that applying the series-qualifier canon gives the most natural reading of the definition. We begin with the text. The policy defines a wrongful act in terms of what it is ("act, error, or omission") and how it is described ("negligent"). This definition follows a familiar structure of a modifier preceding a list of nouns. Grammar rules dictate that when "a straightforward, parallel construction that involves all nouns or verbs in a series" is preceded by a modifier, that modifier "normally applies to the entire series." SCALIA & GARNER, *supra* at 147. This interpretive rule, known as the series-qualifier canon, generally provides the most natural reading of a sentence. Here, the canon counsels qualifying all three nouns—"act," "error," and "omission"—with the term "negligent."

Application of the series-qualifier canon to the definition limits coverage to negligence. That is not an implausible outcome. Parties to a contract may well intend and then memorialize in writing coverage of only negligent acts.

### 2. *Syntax*

This result is supported by the structure and clauses encompassing the policy text. The Supreme Court has said that the most natural way to view a modifying term is as applied to the entire clause when that "clause hangs together as a unified whole." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 440 (2018). In the definition, the clause "act, error, or omission" reads together as a unified whole. The modifying term "negligent" thus applies to the entire clause.

English syntax points in the same direction. Illinois courts have repeatedly held that an initial modifier in a series of nouns or phrases modifies each noun or phrase in the series unless an intervening adjective appears in the series. *See, e.g., Lyons Township ex rel. Kielczynski v. Village of Indian Head Park*, 2017 IL App (1st) 161574, ¶ 26 (Principles of grammar and usage inform interpreting the adjective "oral" to modify both "promise" and "misrepresentation" in the Tort Immunity Act, 745 ILL. COMP. STAT. 10/2-106, which provides a "local public entity is not liable for an injury caused by an oral promise or misrepresentation of its employee.").

This interpretation of the definition is also consistent with how Kinsey and Bellin read Exclusion A, which appears later in the policy and has a parallel structure. Exclusion A states the insurer will not cover claims or expenses "arising out of … any dishonest, fraudulent, criminal or malicious act, error or omission." Both parties agree that the modifying phrase,

"dishonest, fraudulent, criminal or malicious," applies to all three nouns "act, error or omission." As both the definition and the exclusion appear in the same insurance policy, use the same sentence structure, and contain the same ordered list, it is reasonable to conclude that the parties intended these phrases to be interpreted consistently across the document.

### 3. *Caselaw*

Illinois courts have repeatedly agreed that "negligence" modifies each of "act, error or omission." *Ill. State Bar Ass'n Mut. Ins. Co. v. Mondo*, 392 Ill. App. 3d 1032, 1151 (1st Dist. 2009) (no coverage because "the factual allegations in the instant underlying action make clear that Mondo Jr.'s failure to disclose information was allegedly part of his overall scheme to mislead and defraud the Insurance Trust and not based upon any negligent or potentially negligent conduct."); *Steadfast Ins. Co. v. Caremark Rx., Inc.*, 359 Ill. App. 3d 749, 898 (1st Dist. 2005) ("[B]ecause the Policy specifically provides coverage only for a 'negligent act, error, or omission,' we cannot simply ignore the absence of allegations of negligent conduct and inclusion of only intentional conduct in the complaints."); *Cavenagh*, 2012 IL App (1st) 111810, ¶ 18.

Other Illinois courts have assumed, without deciding, that "negligence" modifies all three terms and thus have excluded coverage for intentional conduct. *See, e.g.*, *Ill. State Bar Ass'n Mut. Ins. Co. v. McNabola L. Grp., P.C.*, 2019 IL App (1st) 182386, ¶ 24; *Ill. State Bar Ass'n Mut. Ins. Co. v. Leighton Legal Grp., LLC*, 2018 IL App (4th) 170548, ¶¶ 47, 50; *United Fire & Cas. Co. v. Jim Maloof Realty*, 105 Ill. App. 3d 1048, 1050 (3d Dist. 1982); *Int'l. Ins. Co. v. Allied Van Lines, Inc.*, 293 Ill. App. 3d 513, 519 (1st Dist. 1997).

In contrast, courts that have interpreted "wrongful act" to achieve Kinsey's preferred result dealt with different text. Kinsey cites two non-Illinois cases, one of which is unpublished. But Kinsey fails to mention the different text in the insurance policy here and the policies in those cases. *See Cont'l Cas. Co. v. Cole*, 809 F.2d 891, 895 (D.C. Cir. 1987) ("The policy covered 'damages arising from the performance of professional services for others in the insured's capacity as a lawyer,' but only if such damages resulted from an 'error, negligent omission or negligent act of the insured.'"); *Corp. Realty, Inc. v. Gulf Ins. Co.*, No. Civ.A. 04-2933, 2005 WL 236182, at *1 (E.D. La. Jan. 31, 2005) ("We will pay on behalf of an insured 'damages' for which 'claim' is first made during the 'policy period.' Such damages must arise out of an error, omission or negligent act in the rendering of or failure to render 'professional services' for others by you or on your behalf.").

Kinsey disputes the unequivocal weight of the authority showing that the definition of "wrongful act" encompasses only negligence. It first argues that the series-qualifier canon is limited by context. *See* SCALIA & GARNER, *supra* at 150 ("Perhaps more than most of the other canons, this one is highly sensitive to context."). Kinsey relies on the Supreme Court's discussion of this canon in *Yellen v. Confederated Tribes of Chehalis Reservation*, in which the Court said, "[t]he most grammatical reading of a sentence in a vacuum does not always produce the best reading in context." 594 U.S. 338, 359 (2021).

But the Court's refusal to apply the series-qualifier canon in *Yellen* illustrates an exception to the canon that does not apply here. In *Yellen*, the Court considered whether Alaska Native Corporations (ANCs) met the definition of an Indian tribe

to be eligible for funding under the Coronavirus Aid, Relief, and Economic Security Act. *Id*. at 341. The Court declined to apply the canon to analyze the relevant statute because its application would exclude ANCs from the definition of a tribe even though Congress had explicitly included them in the statute and in the definition. The Court reasoned that excluding ANCs from the definition by applying the canon would "yield a 'contextually implausible outcome.'" *Id.* at 359 (citing *Duguid*, 592 U.S. at 406–07).

Kinsey is correct that canons are not absolute, and that the series-qualifier canon is sensitive to context. But nothing in the context of the policy's definition of wrongful act precludes the canon's use. Applying the canon here does not eliminate an explicit term from the insurance policy. And the language in the definition does not reference people, policies, or other external terms. In short, there is no context to consider outside the four corners of the contract.

Kinsey next points to a footnote in a Wisconsin Supreme Court decision in which it observed that courts "have not consistently determined that an error must be a negligent one if coverage is to be available." *1325 N. Van Buren, LLC. v. T-3 Grp., Ltd.*, 2006 WI 94, ¶ 62 n.16 (citing *USM Corp. v. First State Ins. Co.*, 420 Mass. 865, 868 (1995)). But this does not persuade us. Neither Wisconsin nor Massachusetts law applies here, as Illinois law controls the interpretation of the insurance policy in this case.

Kinsey's reliance on this footnote also takes the Wisconsin Supreme Court decision out of context. The opinion clarifies the position articulated in *1325 N. Van Buren* that "a 'wrongful act' is a 'negligent act' but this is entirely different from a claim of negligence." 2006 WI 94, ¶ 62. To be covered, a

wrongful act must still be negligent, but the claim does not need to allege negligence. *Id.* ("It is entirely possible that one could do a negligent act, which would form the basis for a breach of contract claim."). Thus, rather than articulating a different interpretation of the language in the definition, *1325 N. Van Buren* clarifies the requirement that an act be negligent.

The series-qualifier canon, common English syntax, and the decisions of other courts to have considered similar policy language all point in the same direction: the definition of wrongful act covers a "negligent act, [negligent] error, or [negligent] omission."

### B. "Wrongful act" not ambiguous

If we decide the definition covers only negligence, then Kinsey asks us to declare that definition ambiguous.

An insurance policy is a contract, so traditional contract interpretation rules apply to discern its meaning. *Galarza v. Direct Auto Ins. Co.*, 2023 IL 129031, ¶ 38 (citing *Thounsavath v. State Farm Mut. Auto. Ins. Co.*, 2018 IL 122558, ¶ 17). A "court's primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.* (citing *Thounsavath*, 2018 IL at ¶ 17). If the terms of a policy are unambiguous, they are applied as written, unless they contravene public policy. *Id.* (citing *Schultz v. Ill. Farmers Ins. Co.*, 237 Ill.2d 391, 400 (2010)). Ambiguity exists where the language of the insurance policy is susceptible to more than one reasonable interpretation. *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 308 (7th Cir. 2021) (citing *Founders Ins. Co. v. Munoz*, 237 Ill.2d 424, 433 (2010)). Courts do not consider a disagreement between parties about the meaning of a

provision to constitute an ambiguity. *Id.* Nor will courts "strain to find an ambiguity where none exists." *Id.*

By its very language, the policy covers wrongful acts that are negligent in nature. Negligence is well-known and commonly covered in insurance policies. The parties' disagreement does not render the definition ambiguous. Further, as the cases discussed earlier demonstrate, Illinois courts that have confronted identical language have given identical interpretations of the phrase. The consistency in the caselaw weighs against declaring an ambiguity in the text. What is more, Philadelphia Indemnity wrote the definition so that its coverage works together with the various exclusions in the insurance policy. Adopting Kinsey's interpretation of the phrase would set the definition in conflict with these exclusions. For example, Exclusion A removes from coverage acts that are intentional: "dishonest, fraudulent, criminal or malicious." In addition, Exclusion H carves out from coverage another form of intentional conduct: "express warranties or guarantees or any liability [Kinsey] assume[s] under contract."

Under the "wrongful act" definition, the policy covers Kinsey's negligent acts; other parts of the policy expressly exclude coverage for intentional acts.

### C. No coverage for state court judgment under "wrongful act" definition

If the definition is construed to cover only negligence, then Kinsey says the state court judgment against it falls within the scope of the insurance policy's coverage. Kinsey offers two reasons why the district court erred when it ruled that the state court judgment was not covered. First, Kinsey says the

language used in Bellin's breach of contract complaint—"services were not of quality that conformed to generally accepted industry standards and practices" and Kinsey "did not use reasonable efforts to perform"—sounds in negligence. Second, setting aside the complaint's language, Kinsey says the intent requirements in Bellin's claims and the jury's decision not to award punitive damages demonstrate that Kinsey was found liable for breach arising out of negligence. The district court rejected both arguments. We agree with the district court's analysis.

Typically, insurance law draws a "line of demarcation between negligent acts and breaches of contract." *Hartford Cas. Ins. Co. v. Karlin, Fleisher & Falkenberg, LLC*, 822 F.3d 358, 359 (7th Cir. 2016) (citation omitted) (applying Illinois law). "Illinois courts have refused to permit insured parties to receive insurance coverage for damages that result from a breach of contract." *State Farm Fire & Cas. Co. v. Tillerson*, 334 Ill. App. 3d 404, 410 (5th Dist. 2002) (citation omitted). The reason for this demarcation is to avoid a "moral hazard" problem in which the insured intentionally engages in "risky conduct" it can later shift to the insurance company. *Carolina Cas. Ins. Co. v. Merge Healthcare Sols. Inc.*, 728 F.3d 615, 618 (7th Cir. 2013) (applying Illinois law). In *Hartford*, this court rejected coverage for a law firm's breach of contract under a policy using the same "negligent act, error or omission" language. 822 F.3d at 359–60. The insurance policy did not cover breaches of contract, this court reasoned, so the insurance company had no duty to defend the law firm against the breach. *Id.*

At issue here is the antecedent question whether Kinsey's breach of contract resulted from a negligent act. As did the district court, we ask first whether negligence was at the heart

of the state court's judgment that Kinsey breached its contract with Bellin. The question is not whether Bellin labeled its claim as breach of contract, but what the final disposition was in state court. Throughout trial, the state court never alluded to negligence as the basis for Kinsey's breach. The district court said later, "[t]here is not one crumb in the state court's analysis supporting the idea that the court thought that the breach of contract occurred due to negligence."

Before trial, Kinsey moved the state court for an order finding that the limited liability provision contained in its Agreement with Bellin was valid and enforceable. That court denied the motion. It noted that the Agreement generally limits liability but contains an exception for "Client Losses," which are expenses incurred by Kinsey's clients resulting from "any material breach" of the Agreement by Kinsey or its agents. Thus, the state court reasoned, as Kinsey's failure to implement Global HR constituted a material breach of the Agreement—a breach of contract—limited liability did not apply. So, Bellin's claim for damages fell under the exclusion. Bellin could recover more than the $100,000 recovery limit would permit.

At trial, the state court granted a directed verdict on the breach of contract claim. That court said nothing in the record indicated Bellin had modified its contract to relieve Kinsey of the "obligation" to install Global HR. Before that ruling, the state court inquired whether, "at some point, [Brad] Kinsey actually believed that he no longer had the same obligation under the terms of the contract" to install the Global HR software. Counsel for Brad Kinsey denied any such confusion animated his client's failure to implement the new software. Brad Kinsey knew that the Agreement and associated

Statement of Work required Kinsey to implement Global HR. Failure to do so constituted a breach of contract. The absence of confusion on the part of Brad Kinsey took negligence off the table.

When the state court reduced the jury's damages award, it again described Kinsey's liability as a direct result of a breach of contract, rather than an action based in negligence. In short, the state court's judgment rested on a classic breach of contract claim. The court did not conclude that Kinsey breached its contract through negligence. As the judgment does not fit into any of the categories of a negligent act, negligent error, or negligent omission, it is not covered by the insurance policy. The set-off provision thus does not apply. Bellin therefore can recover the entire amount of the judgment.[2]

Bellin's original complaint alluded to negligence, alleging Kinsey breached professional standards. But that does not change this result. As the district court correctly reasoned, what matters is what Bellin proved, not what it alleged. The language of the complaint does not control our understanding of the state court's judgment. At trial, Bellin proved a breach of contract, not a breach of a duty of care. The state

---

[2] Kinsey says that allowing Bellin to recover on the state court judgment would result in an "impermissible double recovery." But the Thome Settlement precludes this. That settlement released Thome and Philadelphia Indemnity in exchange for $1 million paid to Bellin. The settlement also expressly permitted Bellin's claims against Kinsey and Brad Kinsey to go forward at trial, thus contemplating the possibility that Bellin could prevail on its remaining claims. So, Bellin's ability to collect on a judgment it subsequently won at trial could not be considered a "double recovery" under the express terms of the Thome Settlement.

court's determination, and not the language of the initial complaint, controls.

Nor does Philadelphia Indemnity's decision to defend Kinsey in state court change this result. To Kinsey, its insurer's decision to defend without a reservation of rights or a declaration of non-coverage means the insurer assumed a duty to cover any resulting liability from judgment. *See Standard Mut. Ins. Co. v. Lay*, 2013 IL 114617, ¶ 19 (Generally, when a complaint alleges facts "within or potentially within" an insurance policy's coverage, "and when the insurer takes the position that the policy does not cover the complaint, the insurer must: (1) defend the suit under a reservation of rights; or (2) seek a declaratory judgment that there is no coverage."); *see also Essex Ins. Co. v. Blue Moon Lofts Condo. Ass'n*, 927 F.3d 1007, 1012 (7th Cir. 2019) (Under Illinois law, "[w]hen an insurer steps in to fulfill its obligation to defend by assuming the defense against such a complaint, it must do so under a reservation of rights—or else risk later being estopped from raising policy defenses to coverage."). Whatever the merits of this position, it is not proper to raise it against Bellin. As the district court correctly explained, Kinsey can only raise this argument in a suit against Philadelphia Indemnity if the insurer contests coverage.

### D. Coverage for state court judgment under an exclusion

Exclusion H precludes coverage for any claim or claim expenses "arising out of … any express warranties or guarantees or any liability [Kinsey] assume[d] under contract" unless Kinsey "would have been legally liable in the absence of such contract." This exclusion covers the state court judgment.

Kinsey contracted with Bellin under the Agreement to implement Global HR software. But the state court found that Kinsey failed to do so and instead implemented S3, an older version of the software. This failure to do what Kinsey expressly warranted it would breached the Agreement. The state court's judgment therefore imposed liability on Kinsey. The judgment thus falls under Exclusion H and is not covered by the insurance policy.

Kinsey seeks to interpret the word "assume" to mean that Exclusion H precludes coverage only in situations where Kinsey promises to indemnify a third party. Thus, liability from a breach of contract claim would not be excluded. We construe contractual terms according to their common definitions. Nothing in Exclusion H recommends a different approach. The common definition of "assume" is "to take upon oneself; to take over duties and responsibilities." *Assume*, GARNER'S MODERN ENGLISH USAGE (5th ed. 2022); *see also Assume*, OXFORD ENGLISH DICTIONARY (2nd ed. 1989) ("to take unto (oneself), receive, accept, adopt"). This definition readily includes any liability that Kinsey incurs from a breach of contract claim.

To Kinsey, the breach of contract claim fits into the exception to Exclusion H. Even absent a contract, Kinsey would have nonetheless been held to a standard of reasonableness when it installed software for Bellin. The district court correctly dismissed this argument as "counterfactual." Kinsey would not have installed software for Bellin without a contractual agreement.

Finally, Kinsey argues that if Exclusion H applies, it renders the insurance policy illusory. As Kinsey provides services exclusively through contract, any claim brought against

it would inevitably fall under Exclusion H. Kinsey looks to this court's decision in *Crum* for a solution. 939 F.3d at 858. Where a contract is rendered illusory by an overbroad exception, the court may exercise the "extraordinary remedy" of contract "reformation." *Id.* at 855 (citing *Marks*, 2016 WI 53, ¶ 56).

The district court correctly declined to apply *Crum*. There, "[t]he overlap between claims of professional malpractice and breach of contract [wa]s complete." *Id.* at 857. In other words, the coverage and exclusion in that insurance policy overlapped perfectly and nullified any purported coverage. In contrast, the exclusion in Kinsey's insurance policy is smaller in scope than the policy's coverage. Kinsey's negligence is covered by the policy. But Kinsey's intentional acts are not covered. Exclusion H protects against the moral hazard associated with providing insurance coverage for willful noncompliance with contractual obligations.[3]

---

[3] Bellin contended to us that Exclusion FF also applies to bar coverage of the state court judgment. Oral Argument at 14:25–19:24. The district court did not reach this contention, but by the policy's terms, that exclusion cannot apply.

Exclusion FF precludes coverage of "[a]ny wrongful act committed with the knowledge that it was a wrongful act." That exclusion also uses the policy's definition of "wrongful act."

Kinsey knew it breached the Agreement with Bellin by failing to implement Global HR. But there is no evidence that Kinsey knew it was acting negligently in causing the breach. If Exclusion FF applies, though, then that would require Kinsey knowing it was acting negligently, but not actually acting negligently, which cannot follow.

### III.

The negotiated terms of the Thome Settlement should be given their full effect. As the state court's judgment is not covered by the insurance policy, the set-off provision in the Thome Settlement does not apply. The judgment thus creates a new liability for which Bellin can seek additional recovery.

AFFIRMED.